THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BENTON TURNER, Appellant.

145 451
151 543

145 451
152 58

145 451
s 155 626

145 451
162 378
162 379
162 380

In an action of replevin, brought in the name of the People by the forest commission, to recover logs cut by defendant upon lands included in what is known as the "forest preserve of the state of New York," plaintiff claimed title through a conveyance to the state by the comptroller, who had purchased the lands at tax sales made for unpaid taxes for the years 1866 to 1870 inclusive; this conveyance was executed after the two years allowed for redemption had expired; the deed to the state was recorded three years before the passage of the act of 1885 (Chap. 448, Laws of 1885), which provides that all conveyances theretofore executed by the comptroller, "after having been recorded for two years, * * * shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto * * * were regular." This action was brought after the expiration of the six months. Defendant claimed that the tax sale was illegal and void for the reason that the unpaid tax for 1867 was based on an assessment roll verified before the third Tuesday of August, and that in 1870 the

assessors omitted to meet on the third Tuesday of August. *Held,* that these were not jurisdictional defects, but simply irregularities in the proceedings; that conceding the irregularities to have been such as to render the sale invalid, the owner had his remedy and an opportunity to be heard, by appeal to the board of supervisors, and also by appearance before the comptroller and demand for the cancellation of the tax; and that after the expiration of the six months the defects were cured by the statute.

*People* v. *Turner* (117 N. Y. 227), limited.

Also, *held,* that through the comptroller's purchase and deed the state was constructively in possession, and this constructive possession was made an actual possession by the powers and duties devolved upon the forest commission as its representative by said act of 1885.

Defendant claimed an actual occupancy of part of the lands sold, and that as no notice to redeem was served on the occupant no title was acquired under the sale. It appeared that the land was wild, uncultivated and unimproved forest land, with a small natural meadow thereon, upon which one M., by leave of the owner, at some time after 1871, entered, cut and hauled away grass; also, that on two occasions M. scattered a little grass seed thereon and at times dammed up a brook so as to overflow about half an acre. There was no building on the land and it was uninclosed. *Held,* that the proof failed to establish any such actual occupancy as called for a compliance with the statutory provision requiring service upon the occupant of notice to redeem.

(Argued March 13, 1895; decided April 9, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 8, 1894, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank E. Smith* for appellant. The tax sale of 1877 was illegal and void when it was made. (Black. on Tax Titles [5th ed.], § 522; *People* v. *Hagadorn,* 104 N. Y. 516, 523; *Westfall* v. *Preston,* 49 id. 349; *Jewell* v. *Van Steenburgh,* 58 id. 85; *Bradley* v. *Ward,* Id. 401, 406; *Thompson* v. *Burhans,* 61 id. 52, 65; *People* v. *Suffern,* 68 id. 321, 326; *Brevoort* v. *City of Brooklyn,* 89 id. 128, 132; *Shattuck* v. *Bascom,* 105 id. 39, 45; *People* v. *Turner,* 117 id. 227, 235;

*Sharp* v. *Johnson*, 4 Hill, 92; *Van Rensselaer* v. *Witbeck*, 7 N. Y. 517; *Lockwood* v. *Gehlert*, 127 id. 241; *May* v. *Traphagen*, 139 id. 478; *Sanders* v. *Downs*, 141 id. 422.) The sale of 1877 remains void, notwithstanding chapter 448 of the Laws of 1885. (*Cromwell* v. *MacLean*, 123 N. Y. 474, 489–494; *Denny* v. *Mattoon*, 2 Allen, 361, 382, 383; *Forster* v. *Forster*, 129 Mass. 559; *Orton* v. *Noonan*, 23 Wis. 102; *Baker* v. *Oakwood*, 123 N. Y. 16; *Quinlon* v. *Rogers*, 12 Mich. 168; *Groesbeck* v. *Seeley*, 13 id. 329; *Case* v. *Dean*, 16 id. 12; *Locke* v. *State*, 140 N. Y. 480; *U. S.* v. *Lee*, 106 U. S. 196; *T. & G. R. R. Co.* v. *Comm.*, 127 Mass. 43; *Parmenter* v. *State*, 135 N. Y. 154, 163; *Baxter* v. *State*, 10 Wis. 454; *Stanley* v. *Schwalby*, 147 U. S. 508; *S. F. S. Union* v. *Irwin*, 28 Fed. Rep. 708, 715; *People ex rel.* v. *Chapin*, 104 N. Y. 369; *Ostrander* v. *Darling*, 127 id. 70; *People ex rel.* v. *Wemple*, 139 id. 240; *People ex rel.* v. *Roberts*, 144 id. 234; *U. S.* v. *Jones*, 134 U. S. 1; *U. S.* v. *Alire*, 6 Wall. 573.) Actual occupancy of part of the lot was proven, and, as notice was not served on the occupant, no title was acquired under the 1877 sale. (*Bush* v. *Davison*, 16 Wend. 550; *People ex rel.* v. *Wemple*, 144 N. Y. 478; *Cook* v. *Rider*, 16 Pick. 186; *Lord Advocate* v. *Young*, L. R. [12 App. Cas.] 544; *Harper* v. *Charlesworth*, 4 B. & C. 574; *Tredwell* v. *Reddick*, 1 Ired. Law, 56; *Williams* v. *Buchanan*, Id. 535; *Simpson* v. *Blount*, 3 Dev. Law, 34; *Thornton* v. *Foss*, 26 Maine, 402; *Thacher* v. *Cobb*, 5 Pick. 423; *Hubbard* v. *Kiddo*, 87 Ill. 578; *Comstock* v. *Beardsley*, 15 Wend. 348.)

*Albert Hessberg* for respondent. The decision of this court in the case of *People* v. *Turner* (117 N. Y. 227) is a sufficient authority for the affirmance of the judgment under review, not only being between the same parties, but the facts shown in that case being substantially the same as those defendant claims to have established in this case. (*Ostrander* v. *Darling*, 127 N. Y. 78; *Cromwell* v. *MacLean*, 123 id. 474, 490; *Joslyn* v. *Rockwell*, 128 id. 334, 339; *Moore* v. *City of Albany*, 98 id. 396; *Chase* v. *Chase*, 95 id. 373.)

The defendant was not the original owner, nor did he have any interest in the premises at the time of the commencement of this action, as entitles him to assert the invalidity of the deed to plaintiff. (Laws of 1886, chap. 280.) The evidence and testimony and records offered in evidence by defendant were not sufficient to establish the irregularities alleged in the tax proceedings. (*People ex rel.* v. *Comr. of Taxes,* 99 N. Y. 254; *People ex rel.* v. *Adams,* 125 id. 471–484; *In re Winegard,* 78 Hun, 52, 60; *People* v. *Turner,* 117 N. Y. 238; *Coleman* v. *Shattuck,* 62 id. 358; *Lott* v. *De Graw,* 30 Hun, 417; *Chamberlain* v. *Taylor,* 36 id. 24; *Bradley* v. *Ward,* 58 N. Y. 401.) The defendant failed to show actual occupancy of any part of the lot, and, hence, there was no obligation on the plaintiff to serve a notice to redeem on any one. (*People ex rel.* v. *Wemple,* 144 N. Y. 478; *Miller* v. *R. R. Co.,* 71 id. 380; *Price* v. *Brown,* 101 id. 669; *Cleveland* v. *Crawford,* 7 Hun, 616; *Lane* v. *Gould,* 10 Barb. 254; *Wheeler* v. *Spinola,* 54 N. Y. 377; *Stewart* v. *Chrysler,* 100 id. 378.) The irregularities alleged to exist were cured by chapter 448 of the Laws of 1885. (*People* v. *Turner,* 117 N. Y. 227; *Ensign* v. *Barse,* 107 id. 329; *Chamberlain* v. *Taylor,* 26 Hun, 24; *Van Deventer* v. *Long Island City,* 139 N. Y. 133; *Terrel* v. *Wheeler,* 123 id. 76; *Duanesburgh* v. *Jenkins,* 57 id. 177; *Williams* v. *Suprs.,* 122 U. S. 154.) The defendant was not without a remedy, if entitled to any, during the six months allowed by chapter 448 of the Laws of 1885, within which he might institute an action or proceeding to vacate the tax sale or the conveyance made thereunder. (*People ex rel.* v. *Chapin,* 104 N. Y. 469; *Ostrander* v. *Darling,* 127 id. 70; *People ex rel.* v. *Wemple,* 139 id. 240; *People ex rel.* v. *Roberts,* 144 id. 234; Laws of 1883, chap. 13; Laws of 1885, chap. 448; *People ex rel.* v. *Briggs,* 50 N. Y. 553; *In re G. E. R. Co.,* 70 id. 367; *People ex rel.* v. *Durston,* 119 id. 569; *Rumsey* v. *City of Buffalo,* 97 N. Y. 114; *T. G. Sem.* v. *Cramer,* 98 id. 121; *Stewart* v. *Chrysler,* 100 id. 378; *King* v. *Townsend,* 141 id. 362; *Sanders* v. *Downs,* 141 id. 422;

*Scott* v. *Onderdonk*, 14 id. 9; *Marsh* v. *City of Brooklyn*, 59 id. 280; *Dederer* v. *Voorhies*, 81 id. 156; *Clementi* v. *Jackson*, 92 id. 591; *People ex rel.* v. *Cady*, 18 J. & S. 399; *People ex rel.* v. *Brinkerhoff*, 20 Wkly. Dig. 391; *Board of Liquidation* v. *McComb*, 92 U. S. 531–541.)

GRAY, J.  The appellant in this case is the same person, whose appeal was recently under review by us. (117 N. Y. 227.) The decision there made must be regarded as operative in the present appeal.  In the former case the action was' to recover penalties for cutting trees upon certain lands in Franklin county, in this state; while in this case the action is one of replevin to recover logs taken by the defendant from other lands in that county.  The facts, affecting the defendant's position towards the lands, differ in the two cases, in this; that in the earlier case the defendant was not in possession and showed no title to the lands and was, therefore, a trespasser; while in the present case he claims to have acquired the title and to have been in possession.  Although we might safely rest the determination of this appeal upon the decision rendered in the previous case, where the question was treated as though the defendant had a right, as an owner of the property, to rebut the plaintiff's proof of title, I will, nevertheless, state, briefly, the reasons for affirming this judgment.

The facts respecting the acquisition of title by the defendant are these, viz.: that the defendant received in 1886 a deed from one Riley, who, in the same year, had acquired an interest in the lands by a conveyance from six of the eight children of one Norton.  Norton had acquired the lands in 1872 from the Barnards, who appear to have held the same by tax title. Norton died in 1882 and, subsequently to his death, the conveyance to Riley was made by six of his children, which I mentioned.  The plaintiff's title to the lands was acquired through a conveyance by the comptroller to the state, October 12th, 1877.  He had purchased the same at tax sales, made for the unpaid taxes of the years 1866 to 1870, inclusive.  His deed was made June 9th, 1881, and was recorded June 8th,

1882. The two years allowed for redemption had expired October 12th, 1879. Three years after the record of the People's deed, chapter 448 of the Laws of 1885 was enacted. That act provided that, "All conveyances that have been heretofore executed by the comptroller * * * after having been recorded for two years in the office of the clerk of the county, in which the lands conveyed thereby are located, * * * shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto * * * were regular." The section further provided that, " All such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, as now provided by law, on a direct application to the comptroller or an action brought before a competent court therefor, by reason of the legal payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid." The lands in question are within what is known as the "Forest Preserve of the State of New York ;" and the second section of the act of 1885 makes its provisions applicable to those counties which include the Forest Preserve. The six months mentioned in the act, within which tax sales and proceedings might be open to question after the act went into effect, expired December 9th, 1885. The forest commission had been established in May, 1885, and, by the act creating that commission, it was given' the care, custody, control and superintendence of the Forest Preserve. A warden was employed by the forest commission, who discovered the cutting of the timber by the defendant, and this action was then brought, in behalf of the People, by the forest commission.

Referring now to the points taken by the appellant,. in objection to the right of the People to maintain their action against him, he claims that the tax sale of 1877 was illegal and void ; for the reasons that the tax for the year 1867 was based on an assessment roll verified before the third Tuesday of August and, as to the tax for the year 1870, that the tax assessors had omitted to meet on the third Tuesday of August,

as required by law. He further claims that these were jurisdictional defects, which the act of 1885 could not cure, and he also asserts the unconstitutionality of the act. As to the first objection, relating to the proceedings of the tax assessors, I would observe, in the first place, that they were not jurisdictional defects, in any proper sense. They were irregularities in the proceedings for the assessment of the tax. Some confusion of thought may be occasioned by the unguarded language of Chief Judge Ruger in *People* v. *Turner* (117 N. Y. 227), who speaks of the irregular proceedings by the assessors as jurisdictional defects. But it is very clear that he did not intend the full force of that expression and that he used those words in the sense in which they were used by Judge Finch in *Ensign* v. *Barse* (107 N. Y. 329). In the latter case it was held that those defects, only, which went to the jurisdiction and authority of the assessors were not cured by the act of 1882. The defect there considered was the defective date of the assessors' certificate and that was deemed to be in the nature of an irregularity, merely. In *Joslyn* v. *Rockwell* (128 N. Y. 338), it was held that the act of 1885, now in question, did not differ, in any material respect, from the act of 1882, which was discussed in *Ensign* v. *Barse*. The defects, which the appellant here points out in the proceedings of the tax assessors, are not unlike, in their effect, to those which were relied upon in his former case. There they consisted of the alleged omission by the assessors to give notice of a review of the assessments in the years referred to, or to hold a meeting for such purpose, as required by the statute, and in closing and verifying the assessments prior to the time provided by law. Those irregularities of the assessors were considered by Judge Ruger in connection with the effect to be given to the comptroller's deed, after a certain lapse of time, under the act of 1885. It was held that the act, in its principal aspect, was one of limitation and that, as such, it was within the constitutional power of the legislature to enact as affecting future cases and, as well, existing rights. The appellant concedes that under that decision the

act of 1885 must be regarded as a statute of limitation; but
he, nevertheless, insists upon a distinction in the facts between
the two cases.    He claims here to stand in the shoes of Norton,
who was the owner of the lands at the time of the tax sale
and of the passage of the act of 1885.    As I apprehend his
proposition, it is about this, viz. : that while the act is operative
in cases where the purchaser at a tax sale is in actual pos-
session, it is invalid as against the owner of the lands who, at
the time of the sale and of the passage of the act was, and
remained, in possession, actual or constructive.    By a process
of ingenious reasoning upon the theory of statutes of limita-
tions, the appellant undertakes to show that the theory is
inapplicable to the case of the owner in possession; to
whom there does not. merely by reason of the tax sale,
accrue any cause of action either to obtain title or pos-
session, or to cancel the sale as a cloud upon title.    The argu-
ment is that the sale was void and that the owner could rest
upon its invalidity and defend himself whenever attacked.
All that the appellant says, however, is practically an argu-
ment upon our previous decision and to obviate its effect.    In
the other case, while it was doubted whether a stranger, not
in possession or claiming title and, therefore, not aggrieved,
could raise the question of the invalidity of the act of 1885,
in its operative effect upon the property of another, the
opinion proceeded upon the assumption that the defendant
had the right to rebut the plaintiff's proof of title and took
up the question whether the owner of the property had been
deprived of it without due process of law and an opportunity
of being heard.    That question enters the case in this way,
namely, that the opportunity for the appellant to be heard
before the assessors, at a meeting to be held, as provided by
law, on the third Tuesday of August, was taken away from
him by the fault of the assessors.    In the other case, it was
said, that the argument that a lawful exercise of the taxing
power by the legislature requires that an opportunity to be
heard before the taxing officers, in respect to the imposition
of a tax, should be afforded to the taxpayer, or otherwise, he

is deprived of his day in court, fails if it can be shown that he was not actually, or substantially, deprived of that opportunity. Upon an examination of the statute under which the tax was levied, we thought that the taxpayer was not deprived of such notice and opportunity to be heard as the nature of the case required. We thought that, while the act gave the taxpayer the right to appear before the assessors at the time stated, in order to persuade them to modify, or vacate, his assessment, he still had, under the law, the right, in case of a neglect of the assessors to meet, of appeal to the board of supervisors at their next annual meeting; they having power to review and correct the assessment. "Ample opportunity is thereby given the taxpayer, if he feels aggrieved in respect to assessments of his property, to be heard before the board of supervisors, who are vested with full power to afford all and any relief which was possessed by the assessors." The opinion was there expressed that, " the opportunity afforded the taxpayer, to appear before the board of supervisors and challenge the legality and fairness of his assessment, was a satisfaction of his rights in respect to a hearing on the subject. It would have been competent for the legislature, while authorizing the imposition of taxes, to have omitted altogether the provisions requiring notice and a meeting by the assessors to review assessments, and to have provided only for a hearing before the supervisors in the first instance. * * * So long as the taxpayer is given the equivalent, therefore, the legislature has done all that is required of it under any view of the taxpayer's constitutional rights." The opinion then proceeds as follows: " But more than this. After the tax has been returned to the comptroller, the taxpayer has still the right, both before and after the sale of his property, to appear before that officer and make proof of any illegality in the tax levy, and demand that such tax, and any sale made thereon, shall be canceled by him. (Citing the statutes.) And finally the act of 1885 itself provides for the exercise of the right of the comptroller to cancel taxes and sales illegally made, where the taxes have been legally paid, or where the town or ward

hád no legal right to assess the land.   These rights were not
only open. to the taxpayer to exercise at any time previous to
the act of 1885 ; but the right of all persons to exercise them
was also preserved in all cases for six months after the passage
of that act.    *    *    *    It would seem that the right of a
property owner to assert his title to property claimed by him,
after such ample opportunities to protect such right had been
afforded, could be regulated by a law of limitation without
incurring the objection that his property had been taken with-
out due process of law." The authoritative expressions, in the
opinion referred to, are applicable to the present case.    Con-
ceding the irregularity in the assessment proceedings to have
been such as rendered the sale invalid, nevertheless, the assess-
ors had the jurisdiction and authority to assess and if they erred.
in their proceedings, and neglected to take the steps
which the statute required, there was, in the first place, the
remedy of an appeal to the board of supervisors ; and, in
the second place, there was the opportunity to appear
before the comptroller.    By virtue of the act of 1885,
that opportunity to appear before the comptroller and
to demand the cancellation of the tax sale, because of
irregularities in the proceedings leading to the sale, was con-
tinued for six months after the passage of the act.    Differing
from a case between the owner of lands and the purchaser
thereof at the tax sale, where the comptroller would not have
the power upon the application of the owner to cancel a tax
.title, here the state became. the owner through the purchase
and it was open to the owner to come before the comptroller
and to make proof of the invalidity of the sale through which
the state derived its title.    With the knowledge of the law,
the person claiming to be the owner of the land sold was
chargeable ; and when put upon his inquiry, as to the result
of the proceedings, he discovered the state to have become the
purchaser, it was incumbent upon him to take affirmative
steps to cancel the sale, if he would recover his title to the
lands.    There may be considerable doubt with respect to the
nature of the possession by Norton and of this appellant ; but,

however that may be, the state was constructively in posses-sion through the comptroller's purchase and deed. The effect was that the state had resumed its ownership of the land and its title thereto was assured, as the result of the proceedings, until invalidated by proof respecting the illegality of the pro-ceedings leading to the tax sale. That title, by force of the provisions of the act of 1885, became unquestionable upon the expiration of the six months after it went into effect. While we think the People were not bound to take any steps towards actual possession, after the conveyance to them of the land, any doubt upon the subject would seem to be eliminated by virtue of the provisions of the act which created the forest commission and placed the Forest Preserve, within which are the lands in question, in the care, control and supervision of the commission. The constructive possession which the state had acquired, I think, was made an actual possession by the powers and duties devolved upon the forest commission as its representative.

The appellant raises a final point, that there was an actual occupancy of part of the lands proven and, as no notice was served on the occupant, no title was acquired under the sale of 1877. It would seem that that objection was one of those which should be taken upon an application to the comptroller by the owner, within the time allowed by the act of 1885 to complain of the invalidity of the sale. But the objection in any view is quite untenable. The finding of the referee was that the land was wild, uncultivated and unimproved forest land; with a small natural meadow of about ten acres, upon which, some time after the year 1870, by the leave of Norton, the then owner, one Moody, entered and cut and hauled away grass. Upon two occasions he had scattered a little grass seed and at times he had dammed up the brook, so as to overflow about half an acre. There was no residence, nor building upon the land, nor any cultivation or inclosure thereof, as was the case in *People ex rel. Chase* v. *Wemple* (144 N. Y. 478). We think the proof fell far short of establishing any such actual occupancy of the lands by any person, as called for a compli-

ance with the provision of the law that a written notice to redeem must be served on the occupant.

I do not think it necessary to consider, at further length, the questions argued by the appellant. Enough has been said, in connection with our previous decision in this appellant's other case, to show that the judgment recovered by the People in this case was correct and should be affirmed, with costs.

All concur.

Judgment affirmed.