(24 Misc. Rep. 668.)

### MEIGS v. ROBERTS.

(Supreme Court, Special Term, St. Lawrence County. October, 1898.)

1. EJECTMENT—FOREST PRESERVE—ACTION AGAINST STATE.
    Laws 1893, c. 711, § 13, providing that the comptroller may advertise a list of wild lands held by the state as a forest preserve, from which time such lands "are declared to be and shall be deemed to be in the actual possession of the comptroller, and such possession shall be deemed to continue until he has been dispossessed by the judgment of a court of competent jurisdiction," do not invest such officer with a possession on which to found ejectment by a demandant to try the validity of the title acquired by the state in such lands.

2. STATES—ACTIONS.
    Ejectment will not lie against the state or its representative except it be expressly so provided by statute.

Ejectment by Ferris J. Meigs against James A. Roberts as state comptroller. Dismissed.

John P. Badger, for plaintiff.
Theodore E. Hancock, Atty. Gen., for defendant.

RUSSELL, J. Standing in front of any view of the merits of the controversy between the plaintiff and the state of New York as to the validity of plaintiff's title to the real estate in controversy is the question of right to test the merits of plaintiff's claim in an action of ejectment brought against the comptroller of the state. If a determination in favor of the plaintiff would produce only a barren judgment, then the action will not lie to determine an abstract question. If the servant of the state has no such actual occupancy that

the judgment against him would prevent other agents of the state from acts of possession or protection over the property, then this action cannot be maintained for any effective purpose.

The subject of the controversy is wild land embraced within the forest preserve, and claimed by the state under tax sales. The act of the legislature establishing a forest commission, and defining its powers and duties and for the preservation of the forests, is chapter 283 of the Laws of 1885. By that act all lands owned or thereafter acquired by the state within certain counties should constitute the forest preserve, be kept forever as wild forest lands, and the forest commissioners should have the care, custody, control, and superintendence of the preserve. Sections 7–9. The duties of the forest commissioners, warden, inspectors, and foresters are specifically designated by sections 9, 10, and 11; and by the latter section the forest commissioners are empowered to bring, in the name of the people, actions to recover damages for injuries and trespasses, and also to prevent such injuries. By the legislation of the state, lands may be acquired by purchase for the people of the state, to be included in the forest preserve, and also by tax sales, in the consummation of which the comptroller, as the officer of the state, has certain duties to perfect the title so that the lands bought in by the state upon tax sales may be turned over to the proper board, to whose custody, from the moment the state acquires the lands, the property accruing to the state shall be confided. The plaintiff insists that he has the right to maintain ejectment against the comptroller, in order that the court may decide that the state did not properly acquire the lands now claimed by him, by force of section 13 of chapter 711 of the Laws of 1893, which is here quoted:

"Sec. 13. Possession of Lands by the State. The comptroller may advertise once a week for at least three weeks successively, a list of the wild, vacant and forest lands to which the state holds title, from a tax sale or otherwise, in one or more newspapers to be selected by him, published in the county in which the lands are situated, and from and after the expiration of such time, all such wild, vacant or forest lands are hereby declared to be and shall be deemed to be in the actual possession of the comptroller, and such possession shall be deemed to continue until he has been dispossessed by the judgment of a court of competent jurisdiction."

The object of this section is plainly to give a theoretic possession to the comptroller, or the seisin which theoretically accompanies title, as the last act in the chain of the perfection of title by the state, acting through its officer and servant. It is in no manner inconsistent with the power of actual occupancy, of protection, of care and right of action to prevent or redress injuries, confided to the forest commission, whose power as well as whose duty in these respects begins the instant the state has thus perfected title. This section of the act of 1893 is not followed by any such distinctive and suitable direction for the actual occupancy and possession by the comptroller, and protection, as mark the provisions of law in regard to the powers of the forest commission, but is followed alone by conditional powers of cancellation, or other action looking to a restoration of the title through the comptroller to the actual owner. The whole theory of

the statute in regard to the comptroller is to make him the officer to perfect title through tax sales, and in some cases to exercise discretion to cancel or do certain acts for purposes of redemption, while the whole theory of the laws in regard to the forest commission is to give to them whatever of actual custody becomes necessary to accomplish the purposes for which the lands were acquired for the forest preserve. Turner v. New York, 168 U. S. 90, 18 Sup. Ct. 38. People v. Turner, 145 N. Y. 451, 40 N. E. 400. It is well known that no action can lie against the state in one of its own courts, and the authority to take from it any money or property by judgment must be distinctly expressed, and cannot be implied. People v. Dennison, 84 N. Y. 273. It was even doubted once in England whether the king could maintain ejectment, because ejectment might not be maintained against him. Adams, Ej. 78. As a matter of course, the state cannot be dispossessed of its property in its own courts by an action in form against its servant or officer. As a matter of grace the state may, by the creation of a board of audit or state board of claims, allow remedial process against itself which it will recognize. The United States has occasionally permitted ejectment against its own servants or lessees. Grisar v. McDowell, 6 Wall. 363; Meigs v. McClung's Lessee, 9 Cranch, 11. But such rights are those purely of favor, and must be expressly conceded in order to justify action. It follows, therefore, as a logical conclusion, that an action to determine the title of the plaintiff, as against the state of New York, cannot be maintained in the courts of the state of New York, unless that state has in some manner expressly given its consent to such form of procedure. The statute relied on by the plaintiff does not give such consent. The theory of all the legislation in regard to the forest preserve forbids even the implication of such consent. The comptroller is not in occupancy, legally speaking, of these wild lands, to such an actual extent so that the judgment would disturb the possession of the state; and, if he were, no lawful authority of the state of New York has ever consented that such a judgment should affect the title of the people to any portion of the forest preserve. The complaint is therefore dismissed, with costs.

Complaint dismissed, with costs.