SARANAC LAND AND TIMBER COMPANY *v.* COMP-
TROLLER OF NEW YORK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF NEW YORK.

No. 94. Argued December 21, 22, 1899. — Decided April 9, 1900.

*Turner* v. *New York*, 168 U. S. 90, is affirmed and followed to the point that
"the statute of New York of 1885, c. 448, providing that deeds from the
comptroller of the State of lands in the forest preserve, sold for nonpay-
ment of taxes, shall, after having been recorded for two years, and in
any action brought more than six months after the act takes effect, be
conclusive evidence that there was no irregularity in the assessment of
the taxes, is a statute of limitations, and does not deprive the former
owner of such lands of his property without due process of law in viola-
tion of the Fourteenth Amendment of the Constitution of the United
States," and is held to be decisive.

THIS is an action of ejectment brought to recover a tract of
7500 acres of forest land, known as the northwest quarter of
township 24, Great Tract One, Macomb's Purchase, situated in
Franklin County, in the Northern District of the State of New
York.

The plaintiff deraigned title by various mesne conveyances
from one Daniel McCormick, who became the grantee of the
State of New York in 1798. The defendant claims through
deeds executed to the State of New York in pursuance of sales
for taxes.

The defendant also set up as a defence a six months' statute
of limitations contained in chapter 448 of a law enacted in 1885
—certain statutes against champerty—the illegal organization
of the plaintiff in error, and a former adjudication made on an
application to cancel one of the tax sales under which the State
claimed title.

The first sale upon which the title of the State is based was
made in 1877 for unpaid taxes of 1866 to 1877, inclusive. A
certificate was issued dated October 18, 1877, showing a sale to
the State of the whole of the northwest quarter for the sum of
$2756.40, and subsequently a deed in the usual form, and dated

June 9, 1881, which was recorded in Franklin County clerk's office June 8, 1882.

The subsequent sales were made respectively in 1881 for the unpaid taxes of 1871 to 1876; in 1885 for those of 1877 to 1879; in 1890 for those of 1881 to 1885. At all of the sales except the first one the property was treated as already state property, and struck off to the State without giving opportunity for bids. Certificates and deeds were duly issued to the State in pursuance of the sale of 1881 and 1885 in due form, and duly recorded in the clerk's office of the proper county. A certificate alone was issued in pursuance of the sale of 1890.

The taxes for the years 1866 and 1867 were assessed against the whole quarter as one parcel. In the years 1868, 1869 and 1870 the whole quarter was not assessed, and so much of it as was assessed was placed upon the rolls in two parcels, and described as follows:

"Township 24, Great Tract One, Macomb's Purchase; N.W. $\frac{1}{4}$, excepting 1000 acres, lying in N.W. corner; also 1215 acres which is water, leaving 5285 acres.

"Macomb's Purchase, Great Tract One, township 24, 1000 acres, lying in the northwest corner of northwest quarter."

There was evidence tending to show that on the tract in controversy there were bodies of water, but no part of them was within the parcel of 1000 acres laid out in a square form in the northwest corner.

In December, 1894, the defendant caused a notice to be published once a week for three successive weeks in a newspaper published in Franklin County, of which the following is a copy:

"To whom it may concern:

"Notice is hereby given that the following is the list of wild, vacant forest lands located in the county of Franklin to which the State holds title, and that from and after three weeks from the 22d day of December, 1894, possession thereof will be deemed to be in the comptroller of this State, pursuant to the provisions of section 13 of chapter 711, Laws of 1893.

"WILLIAM J. MORGAN,
"Deputy Comptroller."

The list attached to this notice contained the land in question.

When the testimony in the case was closed the counsel for each of the respective parties, with the approval of the court, admitted that there was no question of fact in the case to be submitted to the jury ; that the issues depended upon the construction that the court should give to the law; and thereupon the jury was discharged, and a written stipulation waiving a jury trial was signed by the attorneys of record for the respective parties and filed with the clerk.

The plaintiff requested the court to rule on certain propositions of law which were based on the assumption of the sale of the tract in one parcel for the aggregate unpaid taxes for several years, and claiming the following as jurisdictional defects in the sale and not cured or validated by chapter 448 of the Laws of 1885, or chapter 711 of the Laws of 1893 : The sale of the whole tract for taxes which were assessed against separate and distinct parcels of it; such sale when during one or more of the years a part of the tract was not assessed ; such sale when some of the taxes were assessed against the whole tract and others against a part only ; insufficiency of the description to identify and distinguish the parcel sold ; that at the sale of 1881 the comptroller treated the property as that of the State, and struck it off to the State without giving opportunity for other bids; and that chapter 448 of the Laws of 1885 was unconstitutional and void, and repugnant to the Fourteenth Amendment of the Constitution of the United States.

These propositions of law the court refused to affirm, and the court's action is assigned as error.

It is also urged that it was error to admit in evidence over the objection of the plaintiff the deed from the State made on the sale of 1881 conveying to the State two parcels of land in the northwest quarter of township 24 by the following description :

" Macomb's Purchase, Great Tract One, township 24, northwest quarter, 5285 acres, more or less, being all that remains of the said northwest quarter after excepting therefrom 1000 acres in the northwest corner thereof, and 1215 acres covered by water; 1000 acres in the northwest corner of the northwest quarter."

Also in receiving in evidence the certificate of sale as sued on the sale of 1890, because it was not in evidence of a legal title.

The assignments of error may, as is said in the brief of plaintiff in error, be reduced in a general way to two —

" First. Is chapter 448 of the Laws of New York of 1885 a valid and constitutional law when set up by the State in its own favor?

" Second. Were the defects shown to exist in the tax sales or either of them of such nature as to be beyond the reach of that law if valid, accepting the construction which has been put upon it by the New York court?"

The act referred to is inserted in the margin.[1] The Circuit Court found in favor of the State, basing its decision upon the constitutionality of chapter 448, following *Turner* v. *New York*, 168 U. S. 90, and holding also the law to be curative of the defects urged against the validity of the tax sales. '83 Fed. Rep. 436. The complaint was filed January 25, 1895. The plaintiff sued out this writ of error.

---

[1] Laws 1885, chapter 448.

An Act to amend chapter four hundred and twenty-seven of the laws of eighteen hundred and fifty-five, entitled, " An act in relation to the collection of taxes on lands of non-residents, and to provide for the sale of such lands for unpaid taxes."

SEC. 1. Section sixty-five of chapter four hundred and twenty-seven of the laws of eighteen hundred and fifty-five, entitled, " An act in relation to the collection of taxes on lands of non-residents, and to provide for the sale of such lands for unpaid taxes," is hereby amended so as to read as follows:

§ 65. Such conveyances shall be executed by the comptroller, under his hand and seal, and the execution thereof shall be witnessed by the treasurer or deputy comptroller, and all such conveyances that have been heretofore executed by the comptroller, and all conveyances of the same lands by his grantee or grantees therein named, after having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the comptroller that shall have remained in force for two years after the last day allowed by law to redeem from such sale shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act, and all laws

*Mr. Frank E. Smith* for plaintiff in error. *Mr. Thomas F. Conway* was on his brief.

*Mr. Theodore E. Hancock* for defendant in error. *Mr. John C. Davies* was on the brief.

Mr. Justice McKenna, after stating the case, delivered the opinion of the court.

If chapter 448 is constitutional, its limitation attached some years before this action was commenced. It was held constitutional by this court in *Turner* v. *New York*, 168 U. S. 90. The contention now is, however, that our conclusion depended upon reasoning not applicable to the case at bar. It is said that to the validity of a statute of limitations a remedy precedent to and during the period of limitation must exist, and that a remedy did exist we assumed was decided by the state court as a state question, and that on a writ of error to its judgment we were bound by the ruling, and for that reason affirmed the judgment. But the pending case being on error to a United

---

directing or requiring the same, or in any manner relating thereto, and all other conveyances or certificates heretofore or hereafter executed or issued by the comptroller, shall be presumptive evidence of the regularity of all the said proceedings and matters hereinbefore recited, and shall be conclusive evidence thereof from and after the expiration of two years from the date of recording such other conveyances or of four years from and after the date of issuing such other certificates. But all such conveyances and certificates and the taxes and tax sales on which they are based' shall be subject to cancellation, as now provided by law, on a direct application to the comptroller or an action brought before a competent court therefor, by reason of the legal payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid.

Sec. 2. The provisions of this act are hereby made applicable only to the following counties, namely: Clinton, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Lewis, Saratoga, St. Lawrence, Sullivan, Ulster, Warren and Washington, but shall not affect any action, proceeding or application pending at the time of its passage; nor any action that shall be begun, proceeding taken, or application duly made within six months thereafter for the purpose of vacating any tax sale or any conveyance or certificate of sale made thereunder.

States court, we not only may, but must, exercise an independent judgment—decide for ourselves, not follow the state court, whether a remedy existed.

But was the conclusion in the *Turner case* as dependent as contended? The question is best answered by the case itself.

The action was brought in the state court, and was replevin for logs cut upon wild forest lands. The State claimed title through sales for delinquent taxes and deeds executed in pursuance of them. The defendant attacked the deeds, alleging the invalidity of the taxes for 1867 and 1870, and offered evidence to show that the oath of the assessors to the assessment roll of 1867 was taken on August 10, instead of on the third Tuesday of August; and that the assessors omitted to meet on the third Tuesday to review the assessment for that year.

The State objected to the evidence as immaterial because the comptroller's deed was made conclusive evidence of those matters by the statute of the State of 1885, c. 448—the statute now in controversy. To the objection it was replied that the statute infringed the first section of the Fourteenth Amendment to the Constitution of the United States. The State's objection, however, was sustained, and judgment was directed and entered for the State, which was affirmed by the Court of Appeals, 145 N. Y. 451.

Mr. Justice Gray delivered the opinion of this court. He stated the law of 1885 establishing a forest preserve and the creation of a forest commission and its duties, and that at the date of the passage of the statute the time for redemption from tax sales was two years. He then stated the enactment and provisions of the law whose constitutionality was attacked, the time of the tax sales, the time for redemption and its expiration, the period the comptroller's deeds were on record and the time that they became conclusive, and said:

"The statute, according to its principal intent and effect, and as construed by the Court of Appeals of the State, was a statute of limitations. *People* v. *Turner*, 117 N. Y. 227; *Same* v. *Same*, 145 N. Y. 451. It is well settled that a statute shortening the period of limitation is within the constitutional power of the legislature, provided a reasonable time, taking into con-

sideration the nature of the case, is allowed for bringing an action after the passage of the statute and before the bar takes effect. *Terry* v. *Anderson*, 95 U. S. 628, 632, 633; *In re Brown*, 135 U. S. 701, 705–707.

"The statute now in question relates to lands sold and conveyed to the State for non-payment of taxes; it applies to those cases only in which the conveyance has been of record for two years in the office where all conveyances of lands within the county are recorded, and it does not bar any action begun within six months after its passage. Independently of the consideration that before the passage of the statute the plaintiff had had eight years since the sale and three years since the recording of the deed, during which he might have asserted his title, this court concurs with the highest court of the State in the opinion that the limitation of six months, as applied to a case of this kind, is not repugnant to any provision of the Constitution of the United States.

"It was argued in behalf of the plaintiff in error that the statute was unconstitutional, because it did not allow him any opportunity to assert his rights even within six months after its passage. But the statute did not take away any right of action which he had before its passage, but merely limited the time within which he might assert such a right. Within the six months he had every remedy which he would have had before the passage of the statute. If he had no remedy before, the statute took none away. From the judgments of the Court of Appeals in the case at bar, and in the subsequent case of *People* v. *Roberts*, 151 N. Y. 540, there would appear to have been some difference of opinion in that court upon the question whether his proper remedy was by direct application to the comptroller to cancel the sale or by action of ejectment against the comptroller or the forest commissioners. But as that court has uniformly held that he had a remedy, it is not for us to determine what that remedy was under the local constitution and laws."

The decision establishes the following propositions:

1. That statutes of limitations are within the constitutional power of the legislature of a State to enact.

2. That the limitation of six months was not unreasonable.

3. That the statute took away no remedy which the landowner had before its passage.

4. That the state court held he had a remedy, although there was difference of ·opinion whether it was by direct application to the comptroller to cancel the sales or by action of ejectment against the comptroller or forest commissioners.

5. That ·as the state courts decided he had a remedy it was not for us to determine what that remedy was under the local constitution and laws — that is, whether it was either a direct application to the comptroller or by action of ejectment.

What, then, did this court assume, that it did not decide or ought now to decide? Counsel for plaintiff in error say that —

"The *Turner case* established the sufficiency of the time allowed by the law now in question, but it treated the existence of a court competent to try the disputed rights and of a person liable to be sued for that purpose as questions of state law, and foreclosed by the judgment of the state court. These things ought now to be decided and not assumed."

The case, however, as we have seen, was not so limited. It decided more than that the time allowed by the statute was reasonable and sufficient. It also decided that the statute took away no remedy the landowner had before its passage, and that the law of the State gave him a remedy. What it precisely was — which of the three enumerated ones it was —was not decided. Not, however, because of the assumption of anything, but because it was not demanded. And why? The question presented was the constitutionality of the statute. That depended upon the existence of a remedy in the landowner during the period of its limitation, and whether a remedy existed what better evidence or authority could there be than the decisions of the courts interpreting the laws of the State? To accept them as such was not to assume anything without deciding it. It was to ascertain a necessary element of decision, and then exercising decision. This was our duty then and it is our duty now, and the fact that the case comes for review from the Circuit Court of the United States neither enforces nor justifies different considerations. If a precedent or coincident remedy is neces-

sary to the constitutional validity of a statute of limitations, the existence of such remedy is necessary to be decided, and it depends upon the same considerations, and must be upon the same examination, no matter in what court it may be presented or may come.

The reasoning of the *Turner case* was therefore complete, and we think it is decisive against the contention of the plaintiff in error. The sufficiency of the remedies enumerated was not contested. It is not contested now. The existence of remedies is denied, but to the reasoning which attempts to support the denial we reply by repeating what we said in the *Turner case* — that as the New York Court of Appeals has uniformly held that the landowner had a remedy, " it is not for us to determine what that remedy was under the local constitution and laws." .

The defects which plaintiff in error claims to have been in the assessments and to have been jurisdictional are stated as follows :

" 1. The sale of the whole tract of land in question for the aggregate unpaid taxes of several years when, during one or more of those years, a part of the tract sold was not assessed or taxed at all.

" 2. The sale as one tract of two or more parcels separately assessed.

" 3. The assessment of taxes by a description so uncertain as not to identify the parcel of land taxed.

" 4. Treating the land on the sale as already the property of the State, and denying opportunity for competitive bidding."

The first two are treated by counsel as similar and dependent upon the same grounds of objection. The specification of those grounds is that at the sale of 1877 the whole quarter, containing 7500 acres, was sold as one parcel for the aggregate unpaid taxes of 1866–1870 inclusive, amounting with interest and costs to $2756.40, but that it was not assessed as a whole except for the years 1866 and 1867 ; that for the years 1868, 1869 and 1870 it was assessed in two parcels ; (1) the northwest quarter of township 24, " excepting 1000 acres lying in the northwest corner ; also 1315 acres which is water ; " and (2) " 1000 acres lying in the northwest corner of the northwest quarter." And that

1215 acres was not assessed at all for those years. The plaintiff in error, however, does not show that it was in any way injured by the manner of selling. Its counsel supposes a possible severalty of ownership of the different parcels, and claims a cause of action from an injury which might have resulted to some one else. "We take it to be settled law," counsel say, "that the constitutionality of a statute is to be tested not so much by what *is done* as what *may be done* under it. . . . The present record is silent as to the actual ownership of. the different parcels of the quarter in question during the years 1866–1870, but plainly they might have been the subject of separate ownership." And counsel proceeds to show how a separate owner, if he had existed, would have been embarrassed in his right of redemption by the necessity of paying some other person's taxes besides his own, and of which he had not been notified during the pendency of the tax proceedings.

We are not concerned with what might have been, but only with what was. The plaintiff in error now sues as owner of the whole tract, and if there was a several ownership of it, or of parts of it, such ownership should have been shown if anything can be claimed from it. We may not suppose it from this record. It is manifest that the manner of sale could do no injury to the owner of the whole tract. Its separation in parcels on the assessment roll would be artificial and mere description. It would not affect its value, would not require the owner to pay some one's else taxes, would not make him pay more than was justly due from him either before a sale or after a sale if he then desired to exercise the right of redemption.

But even if we should suppose a several ownership of the lands at the time of the assessment or sale, we do not think that the defects in the latter were jurisdictional, and certainly of all other defects the law of 1885 is not curative only—it is one of limitation. It matters not, therefore, what the rights of any predecessor of the plaintiff might have been if seasonably asserted. They were not seasonably asserted, and they are, therefore, now precluded.

. The law is like any other statute of limitations. It is not

affected by what the rights of plaintiff in error were. Whatever they were their remedy is gone, and the title and possession of the State, whatever may have been the defects in the proceedings of which they are the consummation, cannot now be disturbed. This was the ruling in *Marsh* v. *Ne-Ha-Sa-Ne Park Association*, 25 App. Div. 34, where the cases were reviewed, and we think correctly interpreted.

In *People* v. *Turner*, 117 N. Y. 227, the remedies of the landowner before and after a sale were considered, and the law defined as one of limitation. The court said: " Considered as an act of limitation, the only question in relation thereto is whether such limitation is just and gives the claimant a reasonable opportunity to enforce his rights. (See authorities, *supra*.) Under all the circumstances of the case it cannot, we think, be said, as a question of law, that the time afforded is unreasonable. Considered as establishing a rule of evidence, the only question for examination is whether property is necessarily taken without due process of law."

That case seems to have been qualified somewhat by *Joslyn* v. *Rockwell*, 128 N. Y. 334, where it was decided that the law was not conclusive against jurisdictional defects. But *People* v. *Turner* was reaffirmed in 145 N. Y 451. If the cases are in conflict the latter must prevail, but assuming their reconciliation to be in the character of the defects passed on, they are equally authoritative against plaintiff in error.

In *Joslyn* v. *Rockwell* two defects were said to be jurisdictional: The payment of taxes and the occupation of the lands. Of the latter it was said: " The act of 1885 (chap. 448) is one, by its title, relating ' to the collection of taxes on lands of non-residents, and. to provide for the sale of such lands for unpaid taxes.' It is provided that occupied lands are not the lands of non-residents. 1 Rev. Stat. 389, § 3. And where lands of a non-resident of a county are occupied by a resident of the town an assessment to the owner in the ' non-resident' part of the roll is illegal, and the lands should be assessed to the resident occupant. *People* v. *Wemple, Comptroller*, 117 N. Y. 77. If the lands were occupied the act of 1885 would not apply." In the case at bar there is no such fact to preclude the application of the law.

In the case of *Meigs* v. *Roberts, Comptroller,* recently decided by the Court of Appeals of New York, *Joslyn* v. *Rockwell,* has been explained and limited, and *People* v. *Turner* again affirmed.

The action was ejectment, and the plaintiff Meigs traced his title by a chain of conveyances from an original grant by the State in 1798. The defendant justified his possession under deeds to the State in pursuance of sales for taxes. One of them was assailed on account of an alleged defect in the notice of redemption published by the comptroller. The defendant pleaded that the action was not brought within the time prescribed by the provision of chapter 448 of the Laws of 1885 and subsequent laws. The trial court dismissed the complaint on the ground that the land was in the occupation of the State, and suit could not be maintained against it without its consent. An appeal having been taken, the Appellate Division reversed the judgment and granted a new trial, holding that the action could be maintained, but also holding that the notice of redemption of the tax sale of 1881 was fatally defective, and that the deed made in pursuance of the sale did not pass title, and that the defect was not cured by the provisions of chapter 148, (subsequently reënacted in part in 1891 and 1893,) which makes the conveyance of the comptroller upon tax sales, after the two years from its record in the county in which the lands are situated, conclusive evidence of the regularity of the proceedings in which conveyance was made.

The case was taken to the Court of Appeals, which reversed the Appellate Division.

The court said :

" We do not find it necessary to pass upon many of the questions which have been elaborately argued before us, or even the one upon which the decision of the trial court proceeded. We are of opinion that the lapse of time between the record of the conveyance of 1881 and the commencement of this action barred the right to the plaintiff to maintain it, even assuming the other questions in the case should be resolved in his favor. The learned Appellate Division held that the failure to publish a proper redemption notice was jurisdictional as to the subsequent conveyance of 1884, and, hence, not cured by chapter 448 of the laws of 1885, and cited *Ensign* v. *Barse,* 107 N. Y. 329, and *Joslyn*

v. *Rockwell*, 128 N. Y. 334, as authorities for that proposition. We think the learned court took too narrow a view of the statute of 1885. This statute, though in some aspects a curative law, is primarily and essentially much more; it is a statute of limitation. It was distinctly held to be such in two decisions of this court, *People* v. *Turner*, 117 N. Y. 227; *Same* v. *Same*, 145 N. Y. 459, and by the Supreme Court of the United States, *Turner* v. *New York*, 168 U. S. 90. A curative act in the ordinary sense of that term is a retrospective law, acting on past cases and existing rights. The power of the legislature to enact such laws is therefore confined within comparatively narrow limits, and they are usually passed to validate irregularities in legal proceedings, or to give effect to contracts between parties which might otherwise fall for failure to comply with technical legal requirements. Cooley's Constitutional Limitations, p. 454. A very full enumeration of the cases in which the legislature may properly exercise this power is to be found in *Foster* v. *Foster*, 129 Mass. 559. But there may be in legal proceedings defects which are not mere informalities or irregularities, but so vital in their character as to be beyond the help of retrospective legislation; such defects are called jurisdictional.. This principle does not apply to a statute of limitations, for such a statute will bar any right, however high the source from which it may be deduced, provided that a reasonable time is given a party to enforce his right. *Terry* v. *Andrews*, 95 U. S. 628; *Turner* v. *New York, supra. Ensign* v. *Barse, supra*, was strictly a case of a retrospective statute, for no period of time was given within which any party affected could assert his rights. The same is true of *Cromwell* v. *McLain*, 123 N. Y. 474. In *Joslyn* v. *Rockwell, supra*, as well as in the two cases of *People* v. *Turner*, all of which arose under the statute of 1885, there is to be found a discussion of defects which it was. claimed were jurisdictional, and not cured by that act. Such discussion, however, is not to be construed as authority for the proposition that jurisdictional defects in legal proceedings which are beyond the scope of retrospective legislation will equally take a claim out of the bar of a statute of limitations. The existence of such defects was necessarily considered in the authorities cited, because the statute of 1885 in terms exempted from its operation cases where

the taxes had been paid, or where there was no legal right to assess the land on which they were laid.   There is no exception, however, as to defects in notice of redemption or in their publication; on the contrary, it is expressly provided that the comptroller's deed, after the lapse of the requisite time, shall be conclusive evidence that 'all notices required by law to be given previous to the expiration of the two years allowed by law to redeem were regular and regularly given.'"

These considerations dispose also of the other objections to the assessment and sale.   If further comment be needed as to the insufficiency of the description, it may be brief.   It is based on the possibility of there having been more or less land than 1215 acres covered by water.   But whether there were depends upon a question of fact, and what the court found we are not informed by the record.   Not insisting on that, however, the evidence of the plaintiff tended to show that the area covered was 1035 acres; the evidence of the defendant tended to show that the area was 1284 acres.   Even if the court found the latter, the difference between it and the assessment did not make the description insufficient.   A description of land for the purposes of taxation is sufficient if it affords the means of identification and does not positively mislead the owner.   Cooley on Taxation, 407; *Keely* v. *Sanders,* 99 U. S. 443.

The assessment was not of the land covered by water.   That was an exception from a larger tract, and an error of a few acres in a part so completely defined by its character surely did not so impair the identity of the larger tract as to hide it from the search or knowledge of its owner, whether he was anxious or indifferent about his taxes.

The same comment can be made of the "1000 acres lying in the northwest corner of the northwest quarter" of the tract, whether we regard it as a parcel or an exception from another parcel.   *Jackson* v. *Vickory,* 1 Wend. 407; *Dolan* v. *Trelevan,* 31 Wisconsin, 147; *Bowers* v. *Chambers,* 53 Mississippi, 259; *Doe ex dem. Hooper* v. *Clayton,* 81 Alabama, 391.

The other assignments of error it is not necessary to specifically notice nor the defences of champerty and the alleged illegal organization of the plaintiff in error.

*Judgment affirmed.*