COMMISSIONER OF STATE LAND OFFICE v. AUDITOR GENERAL.

1. TAXATION—CANCELLATION OF TAX DEEDS—POWER OF AUDITOR GENERAL.
    The power to cancel tax deeds, conferred on the auditor general by section 98 of the tax law (1 Comp. Laws, § 3921), does not authorize him to take such action on his own motion, or on the motion of a stranger to the title.

2. SAME—DEEDS TO STATE—HOMESTEAD LANDS.
    Nor does such power extend to deeds executed by him to the State under the homestead provisions of the tax law.

3. SAME—LIMITATIONS—VALIDITY OF STATUTE.
    The provision of section 131 of Act No. 107, Pub. Acts 1899, limiting the right to attack the titles of existing homesteaders to six months after the act became operative, would seem to be regarded as valid.

Petition by Edwin A. Wildey, commissioner of the State land office, for a writ of prohibition restraining Perry F. Powers, auditor general, from canceling certain tax deeds. Submitted February 11, 1902. (Calendar No. 19,024.) Writ granted June 24, 1902.

Relator, the commissioner of the State land office, asks the writ of prohibition to prohibit respondent, the auditor general, from canceling certain tax deeds. The suit is evidently a friendly one, to obtain a construction of certain provisions of the tax law. The lands described in the petition, the deeds for which the respondent proposes to cancel, were sold for delinquent taxes, and were deeded to the State in the year 1896, in accordance with section 127, Act No. 206, Pub. Acts 1893 (1 Comp. Laws, § 3949). This section reads as follows:

"Whenever it shall hereafter appear that any lands delinquent for taxes have been bid off to the State for a consecutive period of more than three years, and that no application has been made to redeem or purchase the same, it shall be the duty of the auditor general and the commissioner of the State land office, when requested so to do by the township board of the township wherein such delinquent lands are situated, to cause an examination of such lands to be made as soon as practicable, to ascertain their value and the cause of the nonpayment of taxes thereon; and if it shall appear that said lands are barren, swamp, or worthless lands, and have been abandoned by the owner, upon a certificate being filed by the examiner to that effect, the auditor general is hereby authorized to make a transfer by deed of the same to the State as to an individual, as provided in this act, which deed shall be recorded in the proper county, and a copy filed in the office of the commissioner of the State land office, and said commissioner shall thereafter hold said lands as State lands, subject to sale as hereinafter provided; and failure to pay the taxes or to redeem or purchase any lands sold for taxes and bid to the State for more than three consecutive years, as aforesaid, shall be, in all cases where such lands are not actually occupied, *prima facie* evidence that such lands are abandoned by the owner."

This section was amended by Act No. 107, Pub. Acts 1899, so as to read, in part, as follows:

"The determination of the auditor general and commissioner of the State land office in that regard shall be deemed to be conclusive as to the facts therein stated, unless suit is instituted to vacate the same within six months, as hereinafter provided. Within ninety days

after such determination, the auditor general shall make a transfer by deed of all lands so determined by the auditor general and said commissioner of the State land office to come within the provisions of this section to the State of Michigan as to an individual, as provided in section seventy-two of this act, so far as said section is applicable. Said deed or deeds shall be delivered to the commissioner of the State land office, who, after having said deed or deeds recorded in the register of deeds office of the county where the lands are situated, shall file the same in his office.   Upon the execution and delivery of said deed or deeds to the commissioner of the State land office, said commissioner shall hold said lands as State lands, subject to the provisions hereinafter contained.   And no suit shall be instituted to vacate, set aside, or annul the said determination of the said auditor general and the commissioner of the State land office, made as aforesaid, unless instituted within six months after the determination aforesaid.   Any person desiring to file a bill or institute a suit to vacate the findings of the auditor general and commissioner of the State land office, as provided in this section, shall first pay to the auditor general all delinquent taxes returned to the auditor general on the lands in question, together with all interests, costs, and charges, and shall purchase and pay for all bids and titles held by the State to such lands, by paying therefor the amount bid by the State, and all interest and legal charges thereon, as provided in section eighty-four of this act.   The money so received by the auditor general shall be paid into the general fund of the State, and in case the determination of the auditor general and commissioner of the State land office should be set aside and held for naught, and the taxes, or any portion thereof, shall be adjudged invalid for any of the reasons set forth in section seventy-six of this act, then in such case the auditor general shall return to the person entitled thereto such taxes, or any portion thereof, as shall be so adjudged invalid for the reasons aforesaid; and, in case the title is held valid, the money so received shall be divided between the State, county, and township *pro rata*, according to the taxes paid, the same as in other cases.   Any suit instituted for the purpose of setting aside the determination aforesaid may be commenced in the circuit court of the county of Ingham.   It is hereby made the duty of the county clerks of the several counties of this State, on inquiries by the auditor general, to furnish to said auditor

general a certificate showing whether or not any such suit is pending in the circuit court of the counties, as above referred to, relating to any lands described and referred to in the inquiry of the auditor general."

Section 131 is amended by the same act (No. 107), providing that:

"In all cases where the lands have been taken as a homestead, * * * all actions of ejectment, or to recover possession of said lands, or to set aside the title of such homesteader, by any person, firm, or corporation claiming the original or government title, shall be commenced within six months after this act shall take effect, and not afterwards."

Section 98 of the tax law (1 Comp. Laws, § 3921). authorizing the auditor general to cancel deeds, is as follows:

" Whenever any lands returned to the office of the auditor general, or to the county treasurer during the life of the tax law of eighteen hundred ninety-one, shall have been sold on account of nonpayment of taxes thereon, if the auditor general shall discover, before a conveyance of said lands is executed and delivered:

"*First*, that the land so sold was not subject to taxation at the date of the assessment of the taxes for which it was sold; or

" *Second*, that the taxes had been paid to the proper officer within the time limited by law for the payment or redemption thereof; or

" *Third*, that such sale was in contravention of any of the provisions of this act; or

"*Fourth*, that a certificate that no taxes were charged against said lands has been given by the proper officer within the time limited by law for the payment or redemption thereof;—

"The auditor general shall withhold a conveyance of such lands, and shall, on demand, cause the money paid therefor to be refunded to the purchaser, with interest thereon at eight per cent. per annum: *Provided*, that in the last-mentioned case the person in whose behalf such certificate was given shall, at the time of presenting such certificate to the auditor general, pay to the State treasurer, on the statement of the auditor general, all taxes

and charges due to the State upon such land at the time such certificate was issued. If the discovery is not made until after the conveyance has been executed and delivered, a certificate of error may be issued in proper form for record; and the deed, if not recorded, shall be surrendered when the purchase money is refunded. If the deed has been recorded, the money shall be refunded on a recorded release from the holder of the tax deed."

Some of the descriptions were homesteaded before the act of 1899 took effect. As to some of the descriptions, the respondent proposes to cancel the deeds upon his own motion; as to others, he proposes to cancel them upon the motion of a stranger to the title; and as to a few of them, the original owners applied through their attorney, and asked the respondent to cancel the deeds.

The following questions are presented for adjudication:

1. Has the auditor general the power to cancel tax deeds or certificates of sale upon his own motion, or upon the motion of a stranger to the title?

2. Does the power conferred upon the auditor general to cancel deeds apply to deeds issued under the homestead provision of the tax law?

3. Has the statute of limitations run against the right of cancellation?

*Benjamin F. Heckert*, for relator.

*Horace M. Oren*, Attorney General (*Charles W. McGill*, of counsel), for respondent.

Grant, J. (*after stating the facts*). 1. We think the tax law does not confer upon the auditor general the right to proceed upon his own motion to withhold the conveyance of lands sold for taxes, or upon his own motion to proceed to cancel deeds. Thousands of acres of land in this State have been intentionally abandoned, and the payment of taxes intentionally neglected or refused. Owners are presumed, under the law, to know that taxes are imposed upon their lands. It is their duty, therefore, to look after their taxes and attend to their payment. If they fail to do so, the statute has wisely provided a limitation

to their right to take proceedings to cancel the tax deed and set the proceedings aside. Under the contention of the respondent, he could absolutely set aside the running of the statute of limitations by his own voluntary act, when no one solicits his action. The statute clearly contemplates that somebody interested in the lands shall set the auditor general in motion in order to confer upon him the authority to act. No case is cited holding that the auditor general may proceed on his own motion to cancel deeds. The State and the parties interested are entitled to a hearing.

2. The right of the auditor general to cancel deeds under section 98, where the lands have been sold under section 84 of the tax law, is not disputed. *Northrup* v. *Maneka*, 126 Mich. 550 (85 N. W. 1128). The claim of the relator is that that power does not extend to lands which have been deeded to the State, and placed under the charge and control of the land office, as homestead lands. That question is now presented to the court for the first time. The statute (section 127) provides for an adjudication and determination by the auditor general and the commissioner of the State land office as to whether the lands have been abandoned, and their value. They are required to ascertain if the lands have been delinquent for taxes for five years or more; if they have been bid off to the State one or more times; if the time of redemption has expired; if no application has been made to pay, redeem, or purchase the same; and if no action is pending in the circuit court of the county where the land is situated to set aside the taxes, or to remove the cloud on the title occasioned thereby. If these things are found, the statute provides that "the title to the State shall be deemed absolute in and to said lands." The auditor general and commissioner of the State land office are further required to determine what lands so examined come within the provisions of this section, and then to record their determination in a book to be kept for that purpose. Pursuant to the determination of these two State officers, the auditor general then

issues a deed to the State.   The deeds are then delivered
to the commissioner of the land office, whose duty it is to
record them.   The statute above quoted (section 127) then
provides a way by which the owner of the land may pro-
ceed in the courts to test the validity of the finding of
these officers.   We think it was the clear intention of the
legislature, in enacting this law, to put these lands, after
the determination has been made by the auditor general
and commissioner of the State land office, beyond the con-
trol of the auditor general, and to place the power to ques-
tion their proceedings in the courts.   All the cases cited in
behalf of the respondent are cases where the lands have
been sold under section 84, and the language used in those
cases is applicable, and must be confined, to sales made
under that section.

3. It is conceded by the respondent that no certificate of
error can be legally issued by him against those lands
which were homesteaded prior to the time Act No. 107
took effect, as the statutory limitation of six months had
run before any proceeding was taken to set the deed aside.
Similar statutes of limitation have been sustained in other
jurisdictions.   *Meigs* v. *Roberts*, 162 N. Y. 371 (56 N.
E. 838, 76 Am. St. Rep. 322); *People* v. *Turner*, 145 N.
Y. 451 (40 N. E. 400); *Terry* v. *Anderson*, 95 U. S. 628;
*Saranac Land & Timber Co.* v. *Comptroller of New
York*, 177 U. S. 318 (20 Sup. Ct. 642).

Under this disposal of the case it is unnecessary to pass
upon the other provisions of the statute in regard to the
limitation of the right to take proceedings to cancel deeds.

The writ of prohibition will issue, without costs.

Hooker, C. J., Moore and Montgomery, JJ., con-
curred.   Long, J., did not sit.