Radcliffe et al. v. Scruggs.

---

RADCLIFFE ET AL. V. SCRUGGS.

1. CHANCERY JURISDICTION: *Conferred by cross-bill.*

If to a bill in equity which contains no matter of chancery jurisdiction, the defendant files a cross-bill founded on matter clearly cognizable in equity, this supplies the defect of jurisdiction, places the court in possession of the whole case, and imposes the duty of granting relief to the party entitled to it,—the original and cross-bill being but one cause.

2. DONATION DEEDS: *As evidence of title*

Donation deeds are *prima facie* evidence of good title in the donees, and that the land they purport to convey had been regularly forfeited by the previous owners.

3. PRACTICE IN SUPREME COURT: *Allegata and probata must correspond.*

It would be unjust to parties to adjudicate their rights upon issues never made in the court below. A plaintiff cannot recover upon a case not made in his bill. The *allegata* and *probata* must correspond.

4. TAX SALES: *Power of legislature.*

The legislature cannot enact a statute which will transfer one man's land to another under the guise of a tax sale for non-payment of taxes when there has been no assessment or levy of taxes. Nor can it prescribe any period within which the owner must make his objections for such fundamental defects, he remaining in possession and being, in the instance supposed, in no default for not paying his taxes.

5. SAME: *Same.*

The legislature has power to cure any illegality or irregularity in a tax sale which consist in a mere failure to observe some requirement imposed, not by the constitution, but by the legislature itself, and the non-observance of which does not deprive the former owner of any

Radcliffe et al. v. Scruggs.

substantial rights. And it may limit the time within which objections for such failure must be made or be barred.

6. SAME: *Limitation of action against.*

The limitation prescribed by sec. 138, Act of April 8, 1869, to actions to test the validity of tax sales, begins to run from the day the property is stricken off by the officer making the sale. All technical objections to the sale not actually prejudicial to the former owner must be made in two years or be barred.

7. SAME: *Failure to make improvements.*

Upon the failure of a donee under a donation deed to make the required improvements on the land, it reverts to the state. And perhaps no individual can have such interest in the matter as to entitle him to be heard when he complains of the fraud against the state.

APPEAL from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.

*U. M. & G. B. Rose* for appellant.

Mrs. Tate had a clear and undisputed title to an undivided fourth of the south half of the tract, claiming under her patent and tax deed. She was a tenant in common, and as such had a right to the possession. *Freeman on Cot. & Part.*, sec 87; *1 Bouv. Inst.*, sec. 1881; *1' Wash. R. P., 4th ed.*, 656. Being thus rightfully in possession she could not maintain ejectment, and must sue in equity. *36 Cal., 321.* If the court has jurisdiction for one purpose, it will proceed to do full justice as to all questions in the case. *14 Ark., 50; 30 ib., 278; 36 ib., 612; 37 ib., 286.*

The appellee claiming under a tax title, could not acquire the rights of an innocent purchaser. *Cooley on Tax, 328.* Mrs. Tate's title is ample to secure the entire tract unless Scruggs has acquired a better one through the donations.

No evidence was introduced but the commissioner's deed, and it was *prima facie* evidence of a good title. *Mansf. Dig.*, sec. 530; *18 Ark., 423.*.

7–46

The donation deeds were void, because the forfeitures were void, for the following reasons:

*First*—The assessments were not verified. *53 N. Y., 435; Burroughs Tax, p. 232.*

*Second*—The delinquent list was not sworn to. *Blackwell Tax Tit., 4th ed., 204, marg. p. 181; 4 McL., 138; 9 Ohio, 93.*

*Third*—The donations of the Kerr's were each for an undivided interest. *Sec. 4249, Mansf. Dig.*

*Fourth*—The requisite improvements were not made. *Sec. 4255, ib.; 24 Ark., 37; 40 ib., 244; 43 ib., 399.*

*Fifth*—The donees never resided on the lands. *Sec. 4253, ib.*

*Sixth*—Two donations were made on one improvement.

*Seventh*—Until the swamp land patent issued to Mrs. Tate, the title was in the state, and the land not subject to taxation. *17 Ark., 440; 31 ib., 279.*

There is no question of limitation. Scruggs was only in possession about a year before suit, and possession is necessary to set the statute running. *43 Ark., 520.* Besides, the statute does not run against a co-tenant. *1 Wash., R. P., 4th ed., p. 656, marg. p. 417.* And until the issue of the patent to Mrs. Tate, the title was in the state, and the statute did not run. *12 Wall., 93;* and Mrs. Tate is a married woman. *42 Ark., 305.*


*Ratcliffe & Fletcher* for appellee.

The evidence shows clearly that the Kerrs and Scruggs were in actual open and notorious possession. No actual residence necessary. *27 Ark.. 47; 30 ib., 640; 34 ib., 598; 1 Peters., 41;* and their possession extends to the bounds called for in their deeds. *27 Ark., 95; 34 ib., 547; 40 ib., 243.*

A court of chancery has no jurisdiction to remove a cloud or quiet title where the lands are held adversely, nor will an injunction be granted to restrain a mere trespass. *11 Ark., 304; 24 ib., 97; 27 ib., 233; 30 ib., 643; ib., 579.*

If Mrs. Tate had the better title, her remedy was eject-ment. *31 Ark., 353; 36 Cal., 249.*

The deed from Winston does not attempt to convey the land in controversy. Scruggs was not a party to the suit to devise Winston's title, and not affected thereby—he was in possession and had valuable improvements thereon when the suit began.

The assessor's certificate to the list was sufficient. *Gantt's Dig., sec. 5221.*

Whether the lands were regularly forfeited or not, or the deeds were regular or not, does not affect Scruggs' title under the limitation of two years. The statute was not to protect *valid* sales and *valid* titles. *Gantt's Dig., secs. 4117, 5217; 20 Ark., 508; ib., 508; 22 ib., 178.*

There is nothing in the statute prohibiting the donation of undivided interests, or the making of joint improve-ments. If there were, *the state alone could complain.* Even if the donation deeds were void, Scruggs has title by seven years' adverse possession. *12 Ark., 822; 34 ib., 547.* The statute began to run when Kerr took possession, and the statute ran against Radcliffe as trustee and the *cestui que trust. Hill on Trusts, marg. p. 504; 2 Perry on Trusts, secs. 858–9, et seq.; 1 Metc. (Ky.), 498; 3 ib., 167; 17 B. Mon., 381; 31 Ark., 364.*

No residence on the land was required. *Gantt's Dig., sec. 3894–5.*

SMITH, J. The bill states that Mrs. Tate, through Rad-cliffe, her trustee, is the owner of and in the possession of the west half of east half of section 5, township 1 north,

range 10 west. That she claims title through the follow-
ing chain of conveyances:   1. Certificate of purchase from
the state to John A. Winston, dated November 18, 1856.
2. Warranty deed from Winston to Albert Rust, dated
December 17, 1868.   3. Deed from a chancery commis-
sioner to James T. Pace, conveying all Rust's interests,
dated February 7, 1874.   4. Deed from Pace and wife to
Radcliffe, as trustee for Mrs. Tate, dated March 3, 1874.
5. Swamp land patent to Radcliffe as trustee of Mrs. Tate,
dated December 10, 1879, based upon and relating back to
Winston's original entry.   6 and 7. Deeds from Radcliffe
and wife to Mrs. Tate, dated January 26, 1876.   8. A deed
from the commissioner of state lands to Mrs. Tate, dated
February 1, 1879, for an undivided one-fourth interest in
west half of southeast quarter of said section, based upon
a previous forfeiture for taxes.

The bill further states that the defendant, Scruggs, holds
under two donation deeds from the auditor of state, exe-
cuted in 1875, one to M. N. Kerr, conveying the undivided
three-fourths of the west half of northeast quarter of said
section; and the other to E. W. Kerr, conveying the undi-
vided one-fourth of the tract last mentioned and the undi-
vided three-fourths of the west half of southeast quarter
of said section.   The Kerrs, in 1879, sold and conveyed to
Scruggs.   That the state acquired her title by the forfeiture
of said lands, a part of them, for the taxes of 1868, a part
for the taxes of 1869.   That the defendant has no claim
whatever to the undivided one-fourth of the west half of
the southeast quarter of said section, for that is not included
in his donation deeds.   That the forfeitures under which
defendant claims gave him no title, for the reason that the
assessment and delinquent lists were not sworn to, and the
taxes levied for 1869 were in excess of the legal limit.   That
the donations are void for the further reason that while at

the time of their execution all the tract had been forfeited to the state, the said deeds purport to convey only undivided interests. Said deeds are also void because no improvements have ever been made under them, and they were obtained by fraud and misrepresentation. That nevertheless the defendant constantly asserts said land to be his own, impairing thus its market value, constantly trespasses upon it, and by his trespasses and menaces is about to drive the plaintiffs' tenants out of possession. Prayer, that the defendant be enjoined, and that plaintiffs' title be quieted, and for general relief.

The defendant filed an answer and cross-bill, denying the ownership of plaintiffs and their possession. Denies that Winston ever claimed said lands, or ever pretended to convey them. States that the duplicate certificate was procured from the land commissioner by fraud, and that Winston never assigned his certificate of purchase to any one. That plaintiffs' tax deed is void, for the lands were not subject to sale. That the Kerrs donated said lands as stated in the bill, and went into immediate possession, and made the required improvements. That they procured from a justice of the peace the required certificate, showing their improvements, and on that obtained the donation deeds. That from the time of their donation to February 12, 1877, the Kerrs remained in the peaceable possession of the land, and then sold it to defendant. Thereupon defendant took possession, and has been in possession ever since. That defendant and his grantors have paid taxes thereon to the amount of $80, and have placed improvements thereon to the value of $600. The prayer was that his title be quieted.

The plaintiff answered the cross-bill, denying its allegations specifically.

The proofs showed that Scruggs had put into cultivation fifteen or eighteen acres on the north end of the tract in

controversy; and that Mrs. Tate had built a house on the south end of it and had placed a tenant in possession, who proceeded to make a small clearing. The chancellor at the hearing dismissed the bill on the ground that Mrs. Tate's possession was litigious and merely colorable, having been wrongfully acquired and incapable of being used as the basis of a suit to quiet title; her remedy being ejectment. This was error. Mrs. Tate was in the peaceful possession of a part of the tract. She had the right to enter, if not under her chain of title, which extended to the entire tract, yet by virtue of her purchase from the state of an undivided one-fourth interest in the south half of the tract, to which Scruggs had no claim at all. This made her a tenant in common with Scruggs.

1. Chancery jurisdiction conferred by cross-bill. But even if Mrs. Tate was not in a situation, by reason of being out of possession, to maintain a bill of this nature, yet when Scruggs filed a cross-bill founded on matters clearly cognizable in equity, this supplied any defect of jurisdiction, placed the court in possession of the whole cause and imposed the duty of granting relief to the party entitled to it—the original and cross-bill being but one cause. *Cockrell v. Warner, 14 Ark., 345; Sale v. McLean, 29 ib., 612; Missouri v. Iowa, 7 Howard, 660.*

As the testimony was all in and the cause ripe for hearing, we proceed to consider the merits and to render such decree as should have been entered below.

2. Donation deeds as evidence of title. It may be conceded that Mrs. Tate would have a clear title to the whole land but for the intervening tax sale. The effect of a forfeiture for non-payment of taxes, if valid, is to divest the estate of the former owner. The donation deeds were *prima facie* evidence of a good title in the donees and that the land, or the interest in them which they purported to convey, had been regularly forfeited by the previous owners. *Mansfield's Digest, sec. 4257.*

Radcliffe et al. v. Scruggs.

It is argued, however, that the forfeiture for the taxes of 1868 was illegal because the proofs show that the assessment roll was not returned until February 18, 1869; whereas section 26 of the act of July 23, 1868, required it to be returned on or before December 31, 1868, on which day, by section 29 of the same act, the county court was to hold a term and sit for three days as a court of appeals to hear grievances and correct assessments. Of this argument it is sufficient to say that no such issue was made or tendered by the pleadings. The tax title of Scruggs was not attacked for this reason, but for other and different reasons. The proofs taken were not directed to this point. But the county clerk attached to his deposition an extra-official certificate of the assessor for the year 1868, which bears the date of February 18, 1869. And the date of this paper, it is argued, fixes the date of the filing of the assessment list, in the absence of evidence to show the true date; according to the presumption, to which force was given in *Moore v. Turner, 43 Ark., 243.*

It would be an injustice to parties litigant to adjudicate their rights upon issues that were never raised in the court below. A plaintiff cannot be permitted to recover upon a case not made by his bill. The *allegata* and *probata* must correspond.

An inspection of the levies made for county purposes in 1869 fails to disclose that they exceeded the limits prescribed by sections 115–6 of the act of April 8, 1869. One mill was levied for road purposes, two mills for bridges and for rebuilding certain bridges that had been washed away, and two mills for the support of the poor. A levy of three and one-half mills was made to defray ordinary county expenses; and this was not excessive, provided the taxable property of the county did not amount to more than $4,000,000. There is nothing in the record to show

3. PRACTICE IN SUPREME COURT: Allegations and proofs must correspond.

Radcliffe et al. v. Scruggs.

what the amount of taxable property in Pulaski county then was. Six and one-half mills were levied for payment of county indebtedness, principal and interest. It is probable that the rate of taxation for the last mentioned purpose would be governed by the law that was in force when the debts were contracted. But at all events that levy does not violate the provisions of the act of April 8, 1869. For, while this act contemplates that a levy of ten mills on the dollar will ordinarily suffice for the current expenses of county government, yet it distinctly provides that for the payment of debts already contracted, the rate of taxation may be increased 50 per centum. So that the true limit of taxation for county purposes, in the case of a county burdened with an outstanding indebtedness, was not ten, but fifteen mills.

This leaves to be considered only the objection that the assessment roll for 1869 was not sworn to. Section 60 of the act of April 8, 1869, directs the assessor to return in tabular form the extent, description and value of real property in his county subject to taxation. This return is to be verified by an affidavit of its correctness and that the assessor has not appraised any tract or lot of land at less than its true value in money. The question is not so much whether this is a mandatory provision, as whether Mrs. Tate can, at this distance of time, take advantage of the omission of the required affidavit. For section 138 of the same act reads as follows:

"All actions to test the validity of any proceeding in the appraisement, assessment or levying of taxes upon any land or lot thereof, and all proceeding whereby is soughts to be shown any irregularity of any officer, or defect or neglect thereof, having any duty to perform under the provisions of this chapter, in the assessment, appraisement, levying of taxes, or in the sale of lands or lots delinquent

for taxes, or proceedings whereby is sought to avoid any sale under the provisions of this chapter for irregularity or neglect of any kind by any officer having any duty or thing to perform under the provisions of this chapter, shall be commenced within two years from the date of sale, and not afterwards."

What effect, if any, has this provision? Taken in connection with section 140, which undertook to give to the recitals of the tax deed the force of conclusive evidence that each and every act and thing required to be done in order to constitute a valid tax sale had been done, the intention of the legislature undoubtedly was to cut off all defenses against the title after the lapse of two years, except that the land was not taxable, or that the taxes had been paid before sale, or that the sale had been redeemed from.   Later acts allowed the further defense that the owner labored under the disabilities of coverture, infancy, insanity or imprisonment.

But in this sweeping enactment the legislative department transcended the boundaries of its powers.   It could not, under the constitution of 1868, or any similar constitution, enact a statute which should transfer one man's property to another, under a guise of a sale for non-payment of taxes, when there had been no assessment or no levy of taxes.   This would not be due process of law. Neither could it prescribe a short period of time, nor indeed any period, within which the owner must make his objections for such fundamental defects, he remaining in possession and being, in the instance supposed, in no default for not paying his taxes.

4.   TAX SALES: Power of legislature.

This two years statute came before this court in *C. & F. R. Co. v. Parks, 32 Ark., 131*.   The substantial defense in that case was that the county court had attempted to levy a school tax without being thereunto authorized by a·

vote of the qualified electors of the school district. It was decided that the statute had no application to such a case. And the decision was sound, since the objection went to the jurisdiction of the county court to levy the tax. · It was not a question of irregularity, but of power.

But the reasoning of Mr. Justice Walker leads inevitably to one of two conclusions: Either that the statute is inoperative for any purpose, or else it only begins to run from the expiration of the period of redemption. The reporter, who was counsel for the successful party, has drawn the last mentioned conclusion and in his head note has stated it as a point decided. But this is a mere inference or deduction, and is not justified by any announcement of the result reached contained in the opinion itself.

On the other hand, Mrs. Tate's counsel contend that the case decides that the statute was void for the reason that no limitation could run in favor of a tax claimant without actual possession. Certainly succeeding legislatures have not considered the effect of that decision to be to wipe out this section. For we believe it has been re-enacted in terms in every subsequent revenue law we have had. Neither the validity nor the construction of this statute has been settled by previous decisions of this court further than that it does not operate to deprive the former owner of any meritorious defense. And by meritorious defense we mean any act or omission of the revenue officers in violation of law and prejudicial to his rights or interests, as well as those jurisdictional and fundamental defects which affect the power to levy the tax, or to sell for its non-payment.

But while the act cannot have the free course that its framers intended, it is still our duty to give it such effect as may be consistent with legal and constitutional principles. And this may be best accomplished by restricting its operation to mere irregularities or informalities on the part of

officers having some duty to perform in relation to the assessment, levy of taxes, or sale. Our legislation and previous decisions have always distinguished between this class of defects, which have no tendency to injuriously affect the tax payer, and substantial defects, such as go to the jurisdiction of the levying court to levy a particular tax, or to the power of the officer to sell for non-payment, or the omission of any legal duty which is calculated to prejudice the land owner. Thus the revised statutes of 1838 provided that no exception should be taken to any tax deed except such as applied to the real merits of the case. And this continued to be the law down to 1868. *Rev. Stat., chap. 128, sec. 97; Gould's Dig., chap. 148, sec. 131.*

We have no doubt of the power of the legislature to cure any irregularity or illegality in a tax sale, which consists in a mere failure to observe some requirement imposed, not by the constitution, but by the legislature itself, and the non-observance of which does not deprive the former owner of any substantial right; such as the failure of the collector to give bond (*Powers v. Fenny, 59, Miss., 5*); or the failure of the assessor to take the oath of office, or to verify his assessment list by affidavit. The legislature might have dispensed with one or more of these requirements, as was done in the revenue act of July 23, 1868. So it might provide that a failure to comply with any or all such formal requirements by any officer who was charged with any duty in the proceeding, from the assessment to the execution of the tax deed, should be cured after two years from the sale.

5. Power to cure irregularities, etc.

We further hold that the limitation begins from the day the property is stricken off by the officer who conducts the sale. All technical objections to the sale, not actually prejudicial to the former owner, must be brought forward

6. Limitation to action.

within two years under penalty of not being afterwards regarded when the tax title is assailed.

In *Waln v. Shearman, 8 Serg. & R., 357,* and in *Eldridge v. Kuehl, 27 Iowa, 160,* " date of sale " in similar statutes was construed to mean the completed sale, when the purchaser received his deed. But in *Mitchell v. Etter, 22 Ark., 178,* where the five years limitation statute in regard to judicial and tax sales was under discussion, such construction was declared to be at war with both the letter and spirit of the enactment. And whatever may be thought of the correctness of that decision on the main point involved—the running of the statute against all defenses in favor of the tax purchaser, whether he be in or out of possession—yet the case authoritatively fixes the legal signification of such language, and any future legislature, using the same language, will be presumed to have used it with reference to this judicial exposition of it.

The affidavit in question appears to have been intended to protect the interests of the state, rather than of the tax-payer, by guarding against an under valuation of property. And no owner of real estate could have been injured by its omission.

7. DONA-TION:
Failure of donee to make improve-ments.

Again: it is claimed that the donations were void by reason of the failure to make the required improvements. This, if it were so, would not benefit the plaintiff. The land would simply revert to the state. No doubt the improvements made by the Kerrs were of the most flimsy description. The act then in force was by no means stringent as to the character of the improvements. But the evidence. shows that some ten acres of land were cleared and fenced by the two donees. The nature and extent of the improvements were certified by a justice of the peace of the township in which the lands lay, to the auditor; and the state has made no complaint of their insufficiency.

Perhaps no individual has such interest in the matter as to entitle him to be heard when he complains of the fraud practiced upon the state.

The decree is reversed and a decree will be entered here quieting the title and possession of the plaintiff, to and of an undivided one-fourth interest of the west half of south-east quarter, and of the defendant in and to the remaining three-fourths of that tract, and to all of the west half north-east quarter, as against all claims of each other. The appellant will recover the costs of this court; and the costs in the lower court are to be divided equally between the parties.