## COLLIER v. GOESSLING.

(Circuit Court of Appeals, Sixth Circuit. March 17, 1908.)

### No. 1,738.

1. QUIETING TITLE—PLEADING.

Where the holder of a tax title sued out a writ of possession from a state court, and, in a suit to set aside his deed as a cloud on title, filed a cross-bill praying possession, he thereby confessed that the possession was in complainant.

2. SAME—SALE TO STATE—TAX LIST—REQUISITES.

Act Tenn. 1899, p. 1084, c. 435, requires the county trustee to make public sale of land subject to delinquent taxes, and requires that he strike off to the treasurer all lands in lots so sold, when the full amount of taxes, penalties, and costs are not bid at the sale by some private person, and that he shall then file with the clerk a certified list of the lands so struck off, specifying the days of sale, the amounts of the respective taxes for which the sale was made, and each item of cost thereof. *Held*, that where a list contained figures, between perpendicular lines, with nothing to indicate that the figures stood for dollars and cents, and there was no separation of the tax due the state from that due the county, or the amount of any special tax, the list was void, and did not operate to pass any title to the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1371.]

3. TAXATION—TITLE—DEED—CONCLUSIVENESS—STATUTES.

Act Tenn. 1899, p. 1143, c. 435, § 66, provides that a tax deed shall be an assurance of perfect title to the purchaser, and shall not be invalidated by any court except on proof that the land was not liable to sale for taxes, or that the taxes had been paid before sale, and that no suit shall be commenced in any court of the state to invalidate any tax title, after three years from the sale, except in cases of persons under disability, etc. *Held*, that such section was unavailable to validate a tax title, where the clerk was without authority to make the deed because the list filed by the county trustee did not comply with the statute, and that the limitation prescribed was also inapplicable under such circumstances.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1557.]

4. LIMITATION OF ACTIONS.

To start the running of a statute of limitations there must be some one capable of suing, some one subject to the suit, and a tribunal open for such suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 217–219, 384.]

5. TAXATION—LIMITATIONS—COMMENCEMENT OF TERM.

Where a trustee sold certain land to the state for delinquent taxes, and two days before the period of redemption expired the clerk sold the land to defendant by statutory conveyance, the three-years limitation prescribed by Act Tenn. 1899, p. 1143, c. 435, § 66, within which a suit may be brought to contest such title, did not begin to run until the conveyance by

the clerk to defendant, no action being previously available which would have concluded the state, which could not be sued.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

A. W. Biggs, for appellant.

J. P. Holt, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This bill was filed in a chancery court of the state, and duly removed to the court below upon diversity of citizenship. The object of the bill is to remove a tax deed as a cloud upon the title to lots Nos. 16 and 17 of the Trezevant subdivision of land in Shelby county, Tenn., and to enjoin the execution of a writ of possession, issued by the state circuit court, to put the holder of the tax title into possession. An answer and cross-bill was filed by the defendant, and an amended bill and answer to the defendant's cross-bill was filed by the complainant. These pleadings put in issue the validity of the tax deed under which the defendant claimed, and the right of the complainant to maintain any suit to avoid the tax assessments, sale, or deed. Upon a final hearing the court below dismissed the bill; the decision, as indicated by the opinion, going wholly upon the ground that more than three years had elapsed between the tax sale and the filing of the bill.

1. It is useless to go into details about the title of the complainant. He had and has now, at least, such an equitable interest as to entitle him to maintain a bill to clear away a cloud and to enjoin a writ dispossessing him or those claiming under or through him. The lots were inclosed but vacant. That there was an existing possession by Collier, or those in privity with him, is not put in issue by the answer, and is in effect confessed by the suing out of a writ of possession from the state circuit court, as well as by the prayer for such a writ included in the defendant's cross-bill.

2. Laying aside all questions as to the validity of the original assessment for indefiniteness of description or because assessed to one not the owner, as well as the question as to whether as a precedent to a sale of land for taxes a distress warrant must not issue and a return be made of no personal estate, we shall deal only with the validity of the "list" which the trustee is required to file after a sale for delinquent taxes, which is the basis for any title obtained by a purchaser at a tax sale. Under the assessment law in force in Tennessee, the county trustee makes public sale of lands subject to delinquent taxes, and is required to strike off to the State Treasurer all lands or lots so sold when the full amount of taxes, penalties, and costs, etc., are not bid at the sale by some private person, and that he shall then file with the clerk of the circuit court of his county a "certified list of the lands so struck of," "specifying the days of sale, the amounts of the respective taxes for which said sale was made, and each item of cost thereof." This "list," the act declares, shall operate to "vest title" in the Treasurer for the use of the state as fully as a conveyance. It is also provided that the clerk may sell privately to any person who will

pay the taxes due upon the lands so bid off, and that such purchaser shall take the state's title subject to every right of redemption accorded by law to the owner, and that when the redemption period expires the clerk shall make deed to such purchaser, and that the circuit court shall at his demand issue a writ to put him in possession. The lots involved were sold by the county trustee July 5, 1900, and struck off to the Treasurer of the state for the use of the state. The period for redemption extended to July 5, 1902. On July 3, 1902, the clerk sold these lots to the appellee, and on July 10, 1902, made him a conveyance according to the statutory form. Nearly two years after this, appellee applied for a writ of possession, and this writ was in the hands of the sheriff when this bill was filed in June, 1904.

Section 66 of the act of 1899, p. 1143, c. 435, provides that this conveyance "shall be an assurance of perfect title to the purchaser of said land; no such conveyance shall be invalidated by any court, except by proof that the land was not liable to sale for taxes, or that the taxes for which said land was sold have been paid before said sale, and if any part of the taxes for which said land was sold is illegal, or not chargeable on it, but a part is chargeable, that shall not affect the sale, nor invalidate the conveyance thereunder, unless it appears that before sale the amount legally chargeable on the land was paid or tendered to the county trustee, and no other objection, either in form or substance to the sale, or the title thereunder, shall avail in any controversy involving them; and no suit shall be commenced in any court of this state to invalidate any tax title to land after three years from the time said land was sold for taxes, except in case of persons under disability, who shall have one year in which to bring suit after such disability is removed, nor until the party suing shall have paid or tendered to the clerk of the court in which the suit is brought the amount of the bid, and all taxes subsequently accrued, with interest and charges as herein provided. A writ of possession shall, upon application of the purchaser included in this section, be ordered by the court to which the tax sale has been certified."

The objection to this title which we deem it necessary to consider is that the "list" of lands struck off to the state and filed with the clerk of the circuit court was not made in compliance with the positive requirements of the act in that regard. The "list" which included the lots in question did not "specify the amount of the respective taxes for which said sale was made" nor show "each item of cost thereof." Opposite a description of these lots in a column at the top of which are the words and figures, "State, county and special taxes," "103 on $100." Then appear the figures "1236." There is a ruled perpendicular line between figures "1" and "2" and another between "2" and "36." There is, however, no dollar mark at the top of the column, and nothing to indicate whether "1236" stands for dollars or cents. Neither is there any separation of the tax due the state from that due the county nor the amount of any "special tax" tax from either. To the right of the column in which occur these figures are ruled columns, one headed with the words "Interest from February 1, 189—," another headed "Clerk's Commissions, etc.," another "Penalty," and a fourth and last headed "Total tax, costs, etc.," but there are no figures ex-

tended in any of these columns. Under another column headed "Remarks," there occurs "Sold to state July 5, 1900," and under another headed "When and by whom paid" is the entry "Sold July 3, 1902, W. F. Goessling $34.85 Sub. R. Deed Delivered July 14, 1902."

Identical provisions in the assessment act of 1897 were constructed by the Tennessee Supreme Court in the cases styled "Tax Title Cases," 105 Tenn. 245, 58 S. W. 259, and a clerk's deed conveying land, struck off by the trustee to the state, was held void, because the "list" filed by the trustee with the clerk of the circuit court of his county had not been "certified" as the act required. In reference to the provision in section 71 of the act of 1897, p. 37, c. 1, which is identical with that in section 66 of the act of 1899, that the clerk's deed should be an "assurance of perfect title to the purchaser of said land, and no such conveyance shall be invalidated in any court, except by proof that the land was not liable to sale for taxes, or that the taxes for which the land was sold have been paid before said sale," the Tennessee court said that this did not operate to close the door of investigation, and that that provision did not apply to a deed which the clerk was without authority to make. "Behind it," said the court, "must be the power to execute before it can have the efficacy now claimed for it." "It is left scope enough without embracing within it a conveyance which the clerk was without authority to make." Construing the act as requiring the trustee to file a "certified list" of lands struck off to the state, and that a list not certified did not operate to vest any title in the state, the court held that the clerk had no power to convey title where the state had none, and that his deed was impeachable and void. In Condon v. Galbraith, 106 Tenn. 14, 58 S. W. 916, the Tax Title Cases were followed, and a tax deed to a purchaser from the state held to pass no title where the trustee had neglected to certify the list filed by him. It was also held that the circuit court had no jurisdiction under the act of 1899, c. 435, to confirm the title of a purchaser at tax sales, and to award writs of possession to such purchasers, unless the required list had been duly certified. In Hamilton v. Brownsville Gas Light Co. et al., 115 Tenn. 50, 154, 90 S. W. 159, the same court held that the list of sales by the trustee, furnished to the clerk of the circuit court, should be equally as specific and definite in showing the amount of taxes in dollars and cents, as well as each item of costs and penalties in dollars and cents, as would be required to make a valid assessment, and the lists failing to show specifically and definitely the amount of each item of taxes, costs, and penalties, the lists will be insufficient and invalid to divest title out of the owner of the property, and to vest it in the state, or in the purchaser from the state. Among other things the court in the case last cited, said:

"Without passing upon the other assignments, we are of opinion that the sale to the oil company by the clerk of the circuit court was without authority, invalid, and void, and conferred no title upon the oil company as purchaser, and the complainant is entitled to have the cloud, caused by said void sale, removed from the title of the land involved, upon the condition that it pay the amount of taxes assessable against the land for the year 1899, and all subsequent taxes and proper interest on all the same, but without any penalties or costs."

The "list," under which the title was claimed in the case just cited, was subject to the precise defects we have pointed out in the case before us. The court said of it:

"There are certain figures entered on the lists between perpendicular lines, but there is nothing to show or indicate what is meant by these figures. There is no dollar mark attached to any of them, nor does the dollar mark appear anywhere upon the lists, except in the valuation of the property. It has been held in a number of cases that the absence of the dollar mark to indicate what is meant by the figures in the assessment of property is fatal to the assessment, and that perpendicular lines between the figures, separating them, will not suffice to make the assessment good." .

Under these Tennessee decisions, construing this very assessment law and applying that construction to "lists" defective precisely as the "list" which is the basis for the deed under which the appellee claims, we are inevitably led to hold that this deed was void, and the judgment awarding a writ of possession void as having been rendered by a court having no jurisdiction. This brings us to the question of limitation of time within which such a suit as this may be brought as provided in the section of the act of 1899, heretofore set out.

If the provisions of this statute declaring a tax title unavailable except in two specific cases does not apply where the clerk is without authority to make a deed because the "list" filed by the trustee with him does not comply with the provisions of the statute, it is equally plain that the limitation in the latter part of the same section is inapplicable whenever the clerk was without power to make a deed to a purchaser from the state. The clerk's power to sell land which had been struck off to the state and his power to make a conveyance which shall convey the title is a statutory power. In Marx v. Hanthorn, 148 U. S. 172, 180–182, 13 Sup. Ct. 508, 510, 37 L. Ed. 410, it was said:

"A statutory power to be validly executed must be executed according to the statutory directions. It is, no doubt, true that there may be provisions in tax laws that are made in the interest of the public, and which do not concern the taxpayer; and a failure to punctiliously observe them may furnish him with no just ground of complaint. But the well-established rule is, as above stated, that observance of every safeguard to the owner created by the statute is imperatively necessary. So, too, is the rule, when not modified by statute, that the burden of proof is on the holder of a tax deed to maintain his title by affirmatively showing that the provisions of the law have been complied with."

Touching the legislative power to make a tax deed conclusive, the court, in the same case, said:

"It is competent for the Legislature to declare that a tax deed shall be prima facie evidence, not only of the regularity of the sale, but of all prior proceedings, and of title in the purchaser, but that the Legislature cannot deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity, and it cannot, therefore, make the tax deed conclusive evidence of the holder's title to the land. Mr. Cooley sums up his examination of the cases on this subject in the following statement: 'That a tax deed can be made conclusive evidence of title in the grantee we think is more than doubtful. The attempt is a violation of the great principle of Magna Charta, which has been incorporated in our Bill of Rights, and, if successful, deprive the citizen of his property by proceedings absolutely without warrant of law or of justice; it is not in the power of any American Legislature to deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its

own validity. It cannot, therefore, make the tax deed conclusive evidence of the holder's title to the land, or of the possible jurisdictional facts which would make out title. But the Legislature might doubtless make the deed conclusive evidence of * * * everything except the essentials.'"

If every defense is cut off after the lapse of three years, that would include even the fact of a sale by the trustee at all, or that the taxes had in fact been paid, or that the tax was void. So extreme a purpose is not to be lightly attributed to the Legislature, and tends strongly to induce us to hold that this limitation was not intended to apply to those matters upon which the power of the clerk and the jurisdiction of the court depended. This interpretation and application of the limitation clause of this act is not only in clear accord with the Tennessee decisions cited above, but it is in line with the view taken of such statutes by other courts. Radcliffe v. Scruggs, 46 Ark. 96, 106; Alexander v. Gordon, 101 Fed. 92, 41 C. C. A. 228; Boyles v. Boyles, 37 Iowa, 592; Feller v. Clark, 36 Minn. 338, 340, 31 N. W. 175. A statute of Florida provided that no suit should be commenced to set aside a tax deed and recover possession, unless within one year from the recording of the deed, "except upon the grounds that the lands were not subject to taxation, or that the taxes were paid or tendered," etc. The recording of the deed was also made an assurance of title and entry sufficient to authorize suit as for an actual entry. The Florida courts held that this statute did not protect a void deed, and the Florida decisions were reviewed and applied to a tax deed where the assessment was insufficient in description to impart notice to the owner by the United States Supreme Court in Bird v. Benlisa, 142 U. S. 664, 12 Sup. Ct. 323, 35 L. Ed. 1151. See, also, Kraus v. Montgomery, 114 Ind. 103, 16 N. E. 153; Early v. Whittingham, 43 Iowa, 162; Smith v. Kipp, 49 Minn. 119, 51 N. W. 656; and Zink v. McManus, 121 N. Y. 299, 24 N. E. 467.

But if we treat this provision as a statute of limitation, and not as a statute making a tax deed conclusive evidence of every fact upon which its validity depends, and also that the Legislature intended it to apply to tax titles executed by a clerk without any power, a very serious question would arise as to its constitutionality, if applicable to an owner in possession of his own property. What would set the statute in motion if his possession was undisturbed and the writ of possession was based upon the order of a court having no jurisdiction, and the deed of a clerk without power under the statute to make the deed? Might he not defend and show these things? Could a tax purchaser sit still until the lapse of three years, and then summarily oust him and deny him all right to be heard because more than three years had elapsed since the date of the tax sale? The question of whether one in possession can be put to an action without violation of the requirement of due process was not decided in People v. Turner, 145 N. Y. 451, 40 N. E. 400, because the New York court found that the landowner was not in possession. In the same case on review by the Supreme Court of the United States it was held that this question of fact was not open to review, and the constitutionality of a short statute of limitation barring actions to invalidate tax titles maintained upon the ground that the limitation was not unreasonable, there being a

remedy open to the landowner during the entire running of the statute. Neither did the question arise in the subsequent case of Saranac Land & Timber Company v. The Comptroller, 177 U. S. 318, 20 Sup. Ct. 642, 44 L. Ed. 786. Statutes of this description have been held void for want of due process when they operate against a landowner in possession and deprive him of his title under a tax proceeding which was absolutely void, as for want of notice, or where the tax had been paid or tendered, or where the sale or description was defective in those fundamentals which pertain to due process. Alexander v. Gordon, 101 Fed. 92, 41 C. C. A. 228; Spurlock v. Dougherty, 81 Mo. 171; Baldwin v. Merriam, 16 Neb. 199, 20 N. W. 250; Brooks v. Union T. Company, 52 Atl. 238; In Gardner v. Reedy, 62 S. C. 503, 40 S. E. 947, the South Carolina court held that the statute did not start until the purchaser went into possession. See, also, the comment and opinion of Judge Cooley upon such statutes. 2 Cooley on Taxation, 1063. We forego any application of this principle to the facts of this case; the question of fact as to the continuity of actual possession by the appellant and those under whom he claims being in some doubt on the evidence, we put our judgment upon other grounds.

But there is another ground upon which we think this suit in time if we are wrong in holding that the three-years limitation does not apply when the clerk was without power to make a deed to the premises, and that is this: that the limitation did not begin to run until the clerk undertook to convey the premises to the appellee. This sale occurred July 5, 1900. The property was struck off to the State Treasurer for the use of the state. The "list" filed with the circuit court clerk, if valid, vested the title in the state. The state could not be sued in any court of the state, nor could "any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property." Shannon's Tenn. Code, § 4507. An officer of the state acting without authority may be restrained, because that would not be a suit against the state, but against one vainly pretending to act for the state under a void law. Lynn v. Polk, 8 Lea (Tenn.) 121. The principle is a familiar one, and is applied in the courts of the United States in suits against state officials. Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 29 L. Ed. 185; Fitts v. McGhee, 172 U. S. 527, 19 Sup. Ct. 269, 43 L. Ed. 535. Undoubtedly, if the State Treasurer had sued out a writ of possession, the writ might have been enjoined. If he had taken possession personally, an action of ejectment might have been brought to dispossess him, in as much as the suit would have only tried his right to possession it would not have been a suit by the state, nor conclude its claim under the tax sale and "list." United States v. Lea, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171; Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535; Scranton v. Wheeler, 57 Fed. 803, 6 C. C. A. 585; Stanley v. Schwalby, 147 U. S. 508, 13 Sup. Ct. 418, 37 L. Ed. 259. Neither would an action of ejectment brought against an agent of the state in possession conclude the state, and would not, therefore, invalidate the state's tax title.

Neither would a bill to remove a cloud be effectual unless the state would be concluded thereby. Neither would an injunction against

an agent of the state, or against the clerk of the circuit court, conclude the state, unless the state was a party, and this it forbids by law. To restrain the clerk from making a deed to the state would be idle. The act contemplates no deed to the state, but makes the "list" operate as a conveyance vesting title in the state. But, if the clerk should prepare a deed to the state and should be enjoined, the state not being a party, the landowner would be no better off than before. Under section 4972, Shannon's Tenn. Code, an action of ejectment will lie against one in possession or one "claiming an interest." But unless the state itself should be sued in this statutory way the action would be fruitless. There was, therefore, no remedy of which the landowner could avail himself, whether in or out of possession, which would invalidate the tax sale and tax deed, so long as the equitable title was in the state, and the state would not suffer itself to be sued in such way as to conclude itself. To start the running of a statute of limitation there must be some one capable of suing, some one subject to be sued, and a tribunal open for such suits. Thurman v. Shelton, 10 Yerg. (Tenn.) 383; Graham v. Nelson, 5 Humph. (Tenn.) 605, 611; Yancy v. Yancy, 5 Heisk. (Tenn.) 353, 13 Am. Rep. 5; Braun v. Sauerwein, 10 Wall. (U. S.) 218, 19 L. Ed. 895. The state's title did not pass out of the state and into one capable of being sued until the deed of the clerk of July 10, 1902, to appellee. That was less than three years before this bill was brought. This suit to invalidate appellee's tax title was therefore not barred by the limitation relied upon.

Reverse the decree and remand, with directions to pronounce such a decree as indicated by this opinion, requiring, however, that the appellee shall be repaid the tax and interest actually paid by him for which the land was sold, and taxes since paid by him, with interest, but no penalties or costs. Hamilton v. Brownsville Gas Company, 115 Tenn. 150, 90 S. W. 159.