## MARY JANE REILLY v. ANN BLASER ET AL.

*Ejectment—Judgment for entire premises, where plaintiff establishes title to an undivided interest, will be set aside—Tax titles—Statute of limitations— Ten years' possession protects occupant whether deeds good or bad—Purchasers take no more than deeds give them, if seasonably attacked—But after entering into possession all attacks must by made within statutory period.*

1. Where in an action of ejectment plaintiff establishes his title to an *undivided third* of the land, a judgment in his favor for the *entire* premises cannot be sustained.

2. The statute protects parties entering under tax titles, whether *good* or *bad*, after *ten* years' occupancy.

3. Purchasers of tax titles take *no more* than the deeds give them, provided they are seasonably attacked; but after taking possession under them they have a right to require *all* such attacks to be made within the statutory period, and there is no reason for importing into the statute a *new* condition, and for saying that for *some* infirmities the deeds shall be assailable for a longer period than for others.

Error to Superior Court of Detroit. (Chipman, J.) Argued May 5 and 6, 1886. Decided May 12, 1886.

Ejectment. Defendants bring error. Reversed. The facts are stated in the opinion.

*John D. Conely* and *Parker & Burton,* for appellants.

*Brennan & Donnelly* and *Isaac Marston,* for plaintiff.

CAMPBELL, C. J. Plaintiff brought ejectment for the whole of lot 6 in Larned's subdivision of the Lafferty farm in Detroit. Ann Blaser, one of the defendants, died before the trial, and there was no revivor. She occupied certain parts of the lot in severalty, and the other tenants occupied in part as lessees, and in part as owners of other parts. The court ordered a judgment for plaintiff for the premises occupied by the surviving tenants.

Mary J. Reilly claims under Patrick Reilly. Patrick

Reilly claimed by deed from James Reilly, dated January 7, 1858. James Reilly bought lot 6, and the adjoining lot 5, previously, from Richard E. Morse. Morse bought in 1854 an undivided third of a large parcel of 20 acres, of which lots 5 and 6 formed a part, subject to a mortgage covering the entire title of the 20 acres. This mortgage was foreclosed in 1859 or 1860 in chancery ; and, so far as the record shows, no interest was before the court which covered more than Morse's third. James Reilly was made a defendant, but Patrick was not. Lots 5 and 6 were sold, under the foreclosure, to Daniel L. Quirk, who conveyed to James Reilly by quitclaim in 1860, and this inured to Patrick so far as it went, having been an outstanding incumbrance when James deeded to him by warranty in 1858.

This made out a *prima facie* title in Patrick Reilly, and in plaintiff as his grantee, in one undivided third, and no more. The declaration counted on the entire estate in fee, and not on an undivided interest. The judgment is for an entirety in several distinct parcels of lot 6, but not in all of it. If it had been for an undivided third of these specific parcels against mere tenants, and not against their landlord, the remainder of the landlord's interest being excluded, it would present some questions under the statute worth considering. But, as the interest shown is but one-third, and the court directed a verdict for the whole land covered by the verdict, it is impossible to sustain the judgment.

It was said on the argument that there was some oversight in the record, and that really a complete title was or could be made out. As the form of the deeds renders this probable, we shall not discuss the question how far, under a declaration like the present one, an undivided interest could be recovered in parts of the lot held by separate tenants. As the record stands, a reversal is unavoidable.

A principal question in the case arose under defendants' title.

The State of Michigan sold lots 5 and 6 in one parcel for taxes of 1859 and 1862, and the land was bid in by the State. In May, 1867, James Reilly purchased the State titles, and

in 1868 conveyed by warranty deed a part of both lots to Peter Theisen, and the remainder to John Blaser and Ann Blaser, his wife. Defendants claim under them. They went into possession at once, and had been in possession long enough to bar outstanding titles if they can rely on these tax titles. The court below held the tax titles void and insufficient for any purpose, not because irregular, but because in the hands of James Reilly they operated simply as a payment of taxes which he was bound to pay. This ruling was based on the fact that the two lots, which were contiguous, were assessed together.

When these deeds were made, James Reilly had no title to lot 6, or any part of it. He had conveyed that lot to Patrick Reilly by warranty deed, and any prior title which he subsequently acquired, as he did the mortgage interest, passed by operation of law under it. These tax titles originated in proceedings for enforcement of taxes levied after Patrick's title originated. The purchase by the State was adverse to both parties. If James had any interest in lot 6 when he sold to Blaser and Theisen, it was under these deeds, and could not have been under anything else. Not only could they show, therefore, that these deeds were the ground of their entry, but there was nothing else which they could show.

If James Reilly could be regarded, by his peculiar relations with Patrick, as unable to set up such a purchase adversely, or to rely on it for any more than contribution, there is no reason or law for holding that these conveyances were nullities. No one but Patrick could complain of them. As to other persons to whom James was under no obligations, they were perfectly valid, if regular, and valid as conveyances. As to Patrick they may have been voidable; but it can hardly be claimed they were absolutely void as to him.

But there is no reason for holding that, when James Reilly sold to these parties under color of apparently good tax titles, which, if valid, cut off everything behind them, his grantees can be affected with constructive notice of what may have existed many years before in the private relations of him and

his brother. The statute protects parties entering under tax titles, whether good or bad, after 10 years' occupancy. These deeds had nothing on their face to show who claimed the lots when the taxes were levied, or what their relations were.

Purchasers of tax titles take no more than the deeds give them, provided they are seasonably attacked ; but, when they go into possession, they have a right to require all attacks to be made within the statutory period. There is no reason for importing into the statute a new condition, and for saying that for some infirmities the deeds shall be assailable for a longer period than for others.

The rules which are supposed to apply between Patrick and James rest on a somewhat strained notion of mutual duties which we need not now consider in the light of the present controversy. Whether sound or unsound, in such a case as this was, as between them, they do not apply to subsequent purchasers of tax titles not affected by the same equities.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.