CARMELL *v.* PARR.

ADVERSE POSSESSION—TAXATION—TAX DEEDS—STATUTES.

Possession of real property of an open and hostile character for more than fifty years, under tax deeds which are obtained without the breach of any obligation to the owners of the property, by strangers to the title and their grantees, bars an action of ejectment. 1 Comp. Laws, § 3896; 3 Comp. Laws, § 9714; Act No. 86, Laws of 1853; Act No. 32, Laws of 1858.

Error to Kent; Perkins, J. Submitted February 16, 1910. (Docket No. 49.) Decided June 6, 1910.

Ejectment by Gideon Carmell and another against Silas L. Parr and another. A judgment for defendants on a verdict directed by the court is reviewed by plaintiffs on writ of error. Affirmed.

*Drew & Campau* (*Colin P. Campbell, Thomas P. Bradfield,* and *Joseph Barton,* of counsel), for appellants.

*Butterfield & Keeney* (*H. E. Winsor,* of counsel), for appellees.

MOORE, J. This is an action of ejectment. The plaintiffs bring the case here by writ of error.

Prior to the 14th day of May, 1835, and on that day, Louis Campau was the owner of lot 5, section 4, of the original plat of the village of Grand Rapids, and on that day Louis Campau and his wife conveyed all of lot 5, except the north 65 feet thereof, by quitclaim deed, the provisions of which deed are as follows:

"This indenture made this fourteenth day of May in the year of our Lord one thousand eight hundred thirty-five, between Louis Campau and Sophia, his wife, of Kent, Michigan, of the first part, and Antoine Carmell and Tesez, his wife, during their life, and their heirs after their decease of the place aforesaid of the second part, witnesseth."

The granting clause conveys to "said parties of the second part and to their heirs." The *habendum* reads:

"To have and to hold the said premises aforesaid to the said parties of the second part, their heirs and assigns, forever."

The plaintiffs in this case represent the heirs of Antoine and Tesez Carmell; Gideon Carmell holding the interest of all of his brothers and sisters, except that of his sister Theresa, and Lavina Loosemore, representing a portion

of Theresa's interest, being one of her descendants. The evidence shows a conveyance subsequent to the one just described by Antoine Carmell to Alexis Bailey. The date of this conveyance was May 22, 1837, and it conveyed the premises in question. It was disputed as to whether the wife joined in this conveyance or not, and the conveyance not being in the possession of either party, and the record of it having been destroyed, the Scranton abstract, which is a legal record in Kent county, was given in evidence. This abstract showed the name of Antoine Carmell only in the grantor's column; but there was an erasure showing on the page after the word Carmell, which defendants' counsel claimed was where the symbol wife had been, and that this symbol appeared in the original abstract, and that the wife, Tesez, joined in the deed. Plaintiffs claim that the wife did not sign this conveyance, and stand on the Scranton abstract as it appears. Defendants claim through mesne conveyance under this title, also on certain tax titles, which will be mentioned later on, and also by adverse possession.

The appellants claim that the fundamental question is whether the deed mentioned conveyed to Antoine Carmell and his wife a fee to them as tenants by the entireties, as claimed by defendants, or whether, as claimed by plaintiffs, it conveyed to the Carmells simply a life estate with a remainder in fee to their heirs. Counsel for the appellants say the solution of these questions depends upon whether the rule in *Shelley's Case* is applicable to this case. It is insisted:

"The rule in *Shelley's Case* does not apply, because the deed in the case at bar is not within the language or theory of that rule.

"(2) The heirs of Antoine and Tesez are parties to this conveyance. They take as purchasers. Consequently the rule in *Shelley's Case* can have no application unless it be to the heirs of these heirs. If the rule in *Shelley's Case* is applicable at all to this deed, it can apply only to the heirs of Antoine and Tesez. These being parties of the second part, they constitute a new stock of inherit-

ance, and their heirs are those intended by the word 'heirs' in the *habendum*.

"(3) At the time this deed was made, the law of the Territory of Michigan was French law. The rule in *Shelley's Case* was not a part of the French law, and this did not embody any such rule."

Each of these propositions is argued at great length. The defendants controvert each of the above propositions at very great length. They insist the rule in *Shelley's Case* was the law here, when the deed to the Carmells was made, that it is applicable to this case, that the Carmells obtained by virtue of the deed the title in fee as tenants by the entireties, that Mrs. Carmell joined in the deed from her husband, and that plaintiffs have no title upon which to base an action of ejectment. Defendant Nellis also claims the land in question under eight tax titles, all of which she claims are valid, and that defendants were therefore entitled to the direction of a verdict in their favor. It is claimed, further, that, as Mrs. Nellis defends under a title based primarily upon the sale of the lands for unpaid taxes, she is entitled to the benefit of the short statute of limitations applicable to such case.

It will be observed that the case presents a great many very interesting legal questions. In our view of the record, it is not necessary to discuss all of these; but a disposition of one of them must decide the case against the claim of appellants.

The record shows without dispute that as early as in 1854 William R. Barnard acquired tax titles to the land in controversy for the taxes of 1848, 1850, 1851, and 1852, and entered into the possession of the premises under his tax titles, and proceeded to build a hotel thereon. At this time he had no other title than his tax deeds. He and his grantees have been in open and notorious possession ever since, and are still in possession. Solomon O. Kingsbury acquired a tax deed for the taxes of 1860. He had no other title at this time. John C. Fitzgerald obtained a tax title for the taxes of 1877. At this time he had no

title to the property, and none of them owed any duty to the plaintiffs to pay these taxes.

There was no reason why each of these gentlemen might not obtain a tax title and have the title so obtained inure to his benefit. See *Olmstead* v. *Tracy*, 145 Mich. 299 (108 N. W. 649, 116 Am. St. Rep. 299), and the many cases cited therein.

Section 89 of Act No. 86, Laws 1853, reads as follows:

"On the presentation of such certificate of sale to the auditor general, after the expiration of the time provided by law for the redemption of lands sold as aforesaid, he shall execute to the purchaser, his heirs or assigns, a deed of the land therein described, unless he shall have discovered that the same was improperly sold; which deed shall be *prima facie* evidence of the regularity of all the proceedings, from the valuation of the land by the assessors, to the date of the deed inclusive, and of title in the purchaser; and every such deed, when witnessed and acknowledged in the manner prescribed by law for witnessing and acknowledging deeds in other cases, and after it shall have been on record five years in the office of the register of deeds of the county in which the land therein described is situated, shall, except in cases where the auditor general has canceled the sale pursuant to law, or it has been annulled by a court of competent jurisdiction, be positive evidence that the land therein described was, by such deed, conveyed in fee simple to the grantee therein named, and his heirs or assigns; but such lands shall be subject to all unpaid taxes properly chargeable thereon."

This law was amended in 1855 (Act No. 95, Laws 1855) by leaving out the provision making the deed after its record for five years positive evidence of a fee-simple title. This law was amended in 1858 by making provision that, in certain cases, after the tax deed had been on record two years, it should be positive evidence of title in fee simple, and the section ends with the following language:

"And no suit of ejectment shall be commenced to recover said lands, or title thereto sustained thereafter, by any person claiming or holding possession or title through any other source." Act No. 32, Laws 1858, § 89.

Section 124 of the same law contains provisions as to what the auditor general shall do and as to the effect of the deed given by him, and ends with the statement:

"And no suit of ejectment or other suit for the recovery of possession shall be thereafter commenced to recover said lands, nor the title thereto [sustained] by any person claiming or holding possession or title through any other source."

By section 133 of the same law it is provided that:

" In all cases in the prosecution or defense of an action of ejectment or trespass, by any person holding or claiming land, under any deed or deeds or other conveyance of land bid off or purchased for delinquent or unpaid taxes, the party so claiming, under and by virtue of such purchase for unpaid taxes as aforesaid, may show his title to said land and premises, whether the same was derived under one or more purchases or sales for taxes or otherwise, and may give in evidence any and all deeds of conveyance or other evidence of such purchase as aforesaid, which he may at any one or more different times have received on sales for taxes, and may claim title under any or all of them."

Section 135, Act No. 32, Laws of 1858, reads as follows:

"Any description of land bid off to the State at the annual sales, which shall have remained undisposed of for five years from the date when it was so bid off, shall vest in the State an absolute title in fee simple, and no suit of ejectment shall be commenced to recover said lands or title thereto, [or be] sustained thereafter by any person claiming or holding possession or title through any other source; but such lands shall be subject to sale at any time by payment in like manner as other State tax lands, the amount of taxes due thereon and interest at the rate of ten per cent.; and after the expiration of five years, as aforesaid, said lands shall be stricken from the assessment roll, but shall be restored thereto after the same shall have been sold."

We now quote from the brief of counsel:

"As relates to the two years' statute of limitations, contained in the laws of 1858, we admit that this statute could have no application as against one in possession under the

government title. In such case the statute, so far as it declares the deed to be conclusive evidence of title after being recorded two years, is unconstitutional. *Case* v. *Dean*, 16 Mich. 12; *Groesbeck* v. *Seeley*, 13 Mich. 329; *Quinlon* v. *Rogers*, 12 Mich. 168. But the case at bar is different. Here the purchaser at tax title sale was in possession, and we seek to have the statute treated as a limitation law. As a limitation law, it may be sustained, and, if the action is not brought within two years, it is barred. *Semer* v. *Auditor General*, 133 Mich. 569 (95 N. W. 732); *People* v. *Turner*, 117 N. Y. 227 (22 N. E. 1022, 15 Am. St. Rep. 498); *People* v. *Turner*, 145 N. Y. 451 (40 N. E. 400); *Turner* v. *New York*, 168 U. S. 90 (18 Sup. Ct. 38); *Saranac Land & Timber Co.* v. *Comptroller of New York*, 177 U. S. 318 (20 Sup. Ct. 642); *Meigs* v. *Roberts*, 162 N. Y. 371 (56 N. E. 838, 76 Am. St. Rep. 322)."

See, also, Act No. 153, Pub. Acts 1885, §§ 115–117.
Section 3896, 1 Comp. Laws, reads:

"No sale of any lands or deed made by the auditor general under the provisions of this act shall be set aside or annulled by any court of this State after the purchaser, his heirs or assigns, have been in actual and undisputed possession of such lands so sold or conveyed, for a period of five years from the date of such purchase or deed."

Section 9714, 3 Comp. Laws, provides that, in case of ejectment to recover real estate, the action must be brought within 10 years after the right to bring the same shall have first accrued to the plaintiff, or to some person through whom he claims title, where defendant claims title under a deed made by some officer in this State authorized to make deeds upon the sale of lands for taxes assessed and levied within this State. It has been held that this section of the statute protects the person entering under tax titles after 10 years' occupancy. *Reilly* v. *Blaser*, 61 Mich. 399 (28 N. W. 151).

Neither Mr. Kingsbury, Mr. Fitzgerald, Mr. Gorham, nor Mr. Barnard incurred at any time any duty to these plaintiffs. Mr. Gorham was not an occupant or owner of the lands when the taxes of 1877 were assessed. Both

Mr. Kingsbury and Mr. Fitzgerald, as we have seen, were strangers to the title, owing no duty in respect of payment of taxes either to these plaintiffs or the State. The tax titles so acquired by these various purchasers were transferred and through mesne conveyances became vested in Mrs. Nellis. Mrs. Nellis owed to plaintiffs no duty which disabled her to make and rely upon these purchases. Her testimony is she did not even know of their existence and never heard of any of the Carmell family until this suit was brought. Under the authorities above cited, these tax titles are a perfect defense to this suit.

Upon the undisputed evidence, Mr. Barnard went into possession of the *locus in quo* under tax titles in 1854, and for more than 50 years these premises were occupied adversely to these plaintiffs; and such adverse occupation was open, notorious, hostile, and under claim of right.

Judgment is affirmed.

OSTRANDER, HOOKER, McALVAY, and BROOKE, JJ., concurred.